■
**Arthur William LILLO and Evelyn A.
Lillo, his wife, Plaintiffs,**

v.

**Herbert E. THEE and Dorothy M. Thee,
his wife, Defendants and Third Party
Plaintiffs-Appellants,**

v.

**Robert THOMPSON, Third Party
Defendant-Respondent.**

**No. 13179.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 22, 1984.

David G. Neal, Eminence, for defendants and third party plaintiffs-appellants.

Kenneth A. Wagoner, Moore, Brill & Wagoner, P.C., West Plains, for third party defendant-respondent.

GREENE, Judge.

On January 14, 1981, Arthur and Evelyn Lillo sued Herbert and Dorothy Thee, seeking specific performance of a real estate contract in which the Lillos had offered to buy, and the Thees had agreed to sell, real estate in West Plains, Missouri, for the sum of $26,500. In their amended answer and counterclaim, the Thees contended that a promissory note in the sum of $12,083.43 executed by them on February 12, 1974, payable to Robert Thompson, and secured by a deed of trust on the real estate in question, was void and, therefore, the refusal of the Lillos to pay the entire purchase price to the Thees was unwarranted. They requested the court to compel the Lillos to tender to them the entire sale price or, in the alternative, to rescind the

contract, and to award them damages against the Lillos.

The Thees also filed a third party petition against Robert Thompson seeking to cancel the note and deed of trust on the grounds of lack of consideration and to quiet title to the premises in Mr. and Mrs. Thee free and clear of any claim of Thompson. Thompson then counterclaimed against the Thees, asking for the judgment on the note which sum, counting principal, interest and attorney fees, amounted to $20,188.97. While the suit was pending, Herbert Thee died. Dorothy later married a man named Stockbauer and continued her part of the suit. In her reply to Thompson's counterclaim, she alleged that the note and deed of trust were void.

The case finally went to trial in September of 1982, after which the trial court made findings of fact and conclusions of law, and entered judgment. In its findings, the trial court found that the Lillos had fully complied with the contract, had deposited the full purchase price with the proper escrow agent, and were entitled to a decree of specific performance. The trial court also found that Dorothy Thee had executed the note and deed of trust for value received, that she was in default on the note, and that there was due and owing on the note $12,083.43 principal, $6,835.59 interest and $1,891.90 attorney fees for a total of $20,810.92 plus the sum of $2.648 per day interest after September 8, 1982, until the time of payment. The court further found that the deed of trust was a valid lien against the real estate and any monies received from its sale. The decree ordered specific performance, and stated that if Thompson did not receive the sums indicated above from the purchase price money, that he was to retain his right to foreclosure under the deed of trust.

In her appeal, Dorothy Thee contends that the trial court erred in holding that the deed of trust was a valid lien against the real estate, that Dorothy owed $20,810.92 on the note, and that Thompson was to receive such sum plus $2.648 per day interest for each day after September 8, 1982, which was the date of trial, from the purchase price money.

The only real issue at trial was whether the note in question had been issued for a valid consideration. It was Thompson's position that the consideration for the issuance of the 1974 note was the "refinancing" of a note dated November 5, 1965, made payable to Bessie and Jarel Thompson in the sum of $8,500, and executed by Avis Farris, Dorothy Thee, and Herbert Thee. This note, secured by a deed of trust, was part of the consideration Ms. Farris and the Thees paid for the real estate in question when they purchased it from Bessie and Jarel Thompson. Avis is Dorothy's mother, Bessie is the mother of Robert Thompson, and Jarel is his former wife.

At trial, Robert claimed that he was the real owner of the real estate, although he introduced no evidence to corroborate that fact. The prior owners of the property were Mr. and Mrs. John Heidelberg and Mr. and Mrs. John Powers, who sold the property to Bessie and Jarel in 1960. The deed of trust securing the 1965 note shows Bessie and Jarel as third parties, with no mention of Robert Thompson. Robert testified that very little, if anything, was paid on the 1965 note by the Thees and that by February 12, 1974, with accumulated interest, they owed $12,083.43 on the note. He said they executed the new note in that amount as "refinancing" of an existing obligation in that amount. No explanation was given by Robert, or anyone else, as to why he should be payee of the new note, rather than Bessie and Jarel.

Dorothy testified that her father, now deceased, paid off the 1965 note and, in spite of repeated demands by Dorothy, Thompson had not cancelled that note and the deed of trust securing it. Dorothy also testified that she received no consideration for executing the 1974 note. While the evidence is confusing as to why Dorothy executed the 1974 note and deed of trust, such reasons are not important here, if there was no valid legal consideration for the execution of such documents.

■ Usually, in a court-tried case, the trial judge determines the credibility of witnesses, and has the discretion to accept or reject all or any part of the testimony of any witness. *Prudential Property & Cas. Ins. v. Cole,* 586 S.W.2d 433, 434 (Mo.App. 1979). We are also mindful of the rule that one who seeks to have a negotiable instrument declared void on the ground of lack of consideration carries the burden of proving such contention by clear, cogent and convincing evidence. *Herrold v. Hart,* 290 S.W.2d 49, 55 (Mo.1956).

■ These propositions of law, while valid, are subordinated in this case to a fundamental legal principle that no one should be permitted to profit by his own fraud, or to take advantage of his own wrong. *In re Estate of Laspy,* 409 S.W.2d 725, 730 (Mo. App.1966). The facts of this case supporting the application of that doctrine are that Thompson divorced his wife in 1971. In 1974, Jarel, the ex-wife, sued her former mother-in-law, Bessie Thompson, in Howell County Case No. 7016, seeking to partition the 1965 note and, if such could not be done, that the court order the note be sold and the proceeds divided between Jarel and Bessie, as their respective interest might appear. The suit also requested an accounting of all monies received by Bessie as payments on the note.

At trial, Robert Thompson testified as a witness for his mother. The 1965 note, in evidence here as third party plaintiff's (Dorothy) exhibits 7 and 8 shows on the attached payment schedule 17 payments in amounts ranging from $25 to $3,000, with a balance due as of March 17, 1972, of $2,274. Thompson, in his testimony at the prior trial, identified the note, verified the payments made, and stated under oath that the balance shown on the note payment schedule attached to the note of $2,274 had been paid, leaving nothing due and owing on the note. The testimony on this issue was as follows:

"Q. All right, what monies have been paid under that [1965] note? How much is due and owing on that note now?

A. Well there's really not anything due. Well there's $2274.00 until I collect that.

. . . .

Q. Now you've received a payment on the balance of $2274.00, haven't you?

A. Yeah and I gave her [ex-wife] her part.

Q. How much did you give her?

A. A fourth of it.

Q. A fourth of it. How much money did you give her?

A. I've got the check here in my pocket, I think.

Q. Wasn't the payment $1100.00, Mr. Thompson?

A. Well she agreed to take a fourth of it.

Q. I'm asking you if the payment was $1100.00? Please answer my question.

A. Right there's the—

Q. Mr. Thompson, if you'll answer my questions we'll get along a lot better. Otherwise, we're gonna be here a week. Did you receive a payment of $1100.00?

A. I haven't received anything yet.

Q. Did you go to her [ex-wife] dwelling house with a check for $1100.00 for a payment and ask her to endorse that check?

A. I went up there and told her I'd made a settlement and if she wanted to accept a fourth of it, she could if she wanted to.

Q. Did you go up there with an $1100.00 check and ask her to endorse it?

A. Well, I—

THE COURT: Did you go up and ask her to endorse it?

A. Yeah, I had a check, yeah.

Q. How much was it for?

A. Well it was for half of the twenty-two, whatever that'd be. I'd have to look. I have it in my pocket.

Q. All right, let's see it.

A. It's $1137.00 and I gave her half to her.

. . . .

Q. But you had received and collected the $2274.00, is that right?

A. I've got my checks in my pocket.

....

Q. Do you know—did you have this note in your possession when these payments were made (indicating)?

A. I sure did have.

....

Q. All right and since the divorce ... have any payments been made on this note....?

A. Here's one .... A $50.00 payment.

....

Q. And when that $50.00 payment was made, how did it reduce the balance? What did it reduce it down to?

A. It was $2274.00.

....

Q. Okay, then whenever you received these payments here, these $6,000 in payments that were received, those were received before she endorsed it, wasn't they?

A. They was received when we was man and wife. When we was living together."

Based on Thompson's testimony that the note had been paid in full, the trial court, in Case No. 7016, denied Jarel's request for relief.

█ Since Thompson affected the outcome of the proceedings in Case No. 7016 by his testimony under oath, he is bound thereby, even though he now claims he lied at the first trial. The doctrine of judicial estoppel, which is grounded in public policy, holds that a person who states facts under oath, during the course of a trial, is estopped to deny such facts in a second suit, even though the parties in the second suit may not be the same as those in the first. 31 C.J.S. Estoppel § 122, pp. 653–654. Missouri cases approving this doctrine of common sense and fair play are: *Harbin v. Schooley Stationery & Printing Co.*, 362 Mo. 1118, 247 S.W.2d 77, 81 (1952); *Munday v. Austin*, 358 Mo. 959, 218 S.W.2d 624, 628 (1949), and *Owen v. City of Branson*, 305 S.W.2d 492, 497–498 (Mo. App.1957).

█ Since Thompson is bound by his sworn testimony that the 1965 note was paid, there was no consideration for the issuance of the 1974 note and, as a result, it was invalid and is declared void. This being so, the trial court committed prejudicial error by holding that Dorothy owed $20,810.92 on the 1974 note, and that the deed of trust securing the note was a valid lien on the real estate.

The findings of fact and conclusions of law found by the trial court are ordered set aside. The judgment of the trial court is reversed, and the cause remanded to the trial court with directions to enter a judgment for Dorothy M. Thee and against Robert Thompson on her third party petition, that it enter judgment for Dorothy M. Thee and against Robert Thompson on his counterclaim, that it enter judgment for Dorothy M. Thee, quieting title in her to the real estate in question, free and clear of any claim of Robert Thompson or any other person by or through him by reason of the note and deed of trust in question, and that the judgment contain an order directing Dorothy M. Thee to convey the real estate in question to Arthur W. Lillo and Evelyn A. Lillo, conditioned on them paying to Dorothy M. Thee the entire balance due on the purchase price.

Since the delay and expense occasioned in this case were the result of Thompson's transgressions, the judgment should assess all costs against him.

FLANIGAN, P.J., and TITUS and CROW, JJ., concur.