

# SUPREME COURT OF MISSOURI
## en banc

MATTHEW D. VACCA, )
)
      Respondent/Cross-Appellant, )
)
vs. )      **No. SC96911**
)
MISSOURI DEPARTMENT OF LABOR )
AND INDUSTRIAL RELATIONS, )
DIVISION OF WORKERS' )
COMPENSATION, AND BRIAN MAY, )
)
      Appellants/Cross-Respondents. )

*Opinion issued March 19, 2019, and modified on the Court's own motion June 4, 2019*

### Appeal from the Circuit Court of the City of St. Louis
### Honorable Julian L. Bush, Judge

Defendants, the Missouri Department of Labor and former director of the Division of Workers' Compensation, Brian May, appeal the jury verdict awarding Matthew Vacca actual and punitive damages, including substantial future lost wages, on his claim that he was retaliated against for filing a complaint with the Missouri Commission on Human Rights (MCHR) and Equal Employment Opportunity Commission (EEOC) alleging disability discrimination. Defendants make numerous claims of error, but this Court addresses only the claim that judicial estoppel should have been applied to Vacca's claim of future lost wages, as it is dispositive. Judicial estoppel is invoked to protect the dignity

of the judicial proceedings and to prevent parties from playing fast and loose with the judicial process by taking inconsistent positions in two different proceedings. The circuit court found Vacca claimed in this case he could have continued to work as an administrative law judge (ALJ) for 20 years, but in his ongoing dissolution proceeding he claimed he was entitled to maintenance because he was totally unable to work. The circuit court nonetheless incorrectly thought it was barred from applying judicial estoppel because the dissolution judgment had been remanded for further proceedings due to evidentiary errors.

Judicial estoppel is an equitable doctrine. Prior cases, including *New Hampshire v. Maine, 532 U.S. 742 (2001)*, have identified various considerations that courts usually weigh in deciding whether to invoke the doctrine. Other than finding a party took inconsistent positions, no consideration is a fixed prerequisite to application of the doctrine. Here, Vacca was able to successfully convince the court overseeing the dissolution of his marriage to initially award maintenance due to his disability. He also applied for and received long-term disability benefits from the Missouri State Employee Retirement System (MOSERS) based upon his similar claims of being disabled from all work with or without reasonable accommodation. The trial court abused its discretion in refusing to apply judicial estoppel to preclude Vacca from making the inconsistent claim that he was able to work as an ALJ for another 20 years with reasonable accommodations. *See id.; Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999)* (applying judicial estoppel analysis to social security disability benefits recipient pursuing disability discrimination under the Americans with Disabilities Act).

2

For these reasons, this Court reverses the judgment without reaching the other issues raised. Because Vacca may have other damages not affected by the application of judicial estoppel to his claim of lost future wages, however, this Court remands the case.

## I. PROCEDURAL AND FACTUAL BACKGROUND

In 1992, Matthew Vacca became an ALJ in the Division of Workers' Compensation. At about that time, Vacca also was diagnosed with a chronic form of muscular dystrophy.[1] Vacca first reported his disability to his employer in September 1996. From 1996 to 2008, Vacca worked as an ALJ without major issues and with minor alterations in his work life.

At an unspecified point in 2008, Vacca worked out an arrangement with the then-chief ALJ to allow him to work two days each week at the workplace conducting trials and the other three days at home. This allowed him to handle more trials and less of the office administrative work, which his physical difficulties made more challenging. The parties disagree as to whether this was an accommodation for his disability or a flexible work arrangement for his convenience.

In 2009, a new chief ALJ was designated. Vacca believed the new chief ALJ was hostile to the work arrangements previously put in place. Tension came to a head in August 2010 when Vacca received his performance evaluation from the new chief ALJ, who rated Vacca as at least "meets" standard for all elements and "exceeds" for some elements. Vacca received an overall rating of "successful."

---

[1] The particular form of muscular dystrophy suffered by Vacca is inclusion body myositis, a progressive and incurable disease, in which the body attacks its own muscles, slowly weakening the patient.

3

Although Vacca's performance ratings were similar to the evaluations given other ALJs, including the chief ALJ herself, Vacca disagreed with this evaluation and refused to sign it because he had always received all "exceeds" standards and an overall rating of "outstanding." Vacca believed his score was artificially lowered in preparation for firing him. The same day Vacca received his performance evaluation, he faxed a letter to the Missouri Department of Labor and Industrial Relations, requesting an application for long-term disability, stating:

> I believe I <u>may</u> be disabled from performing the material duties of my job on at my employer's usual place of business on a sustained and permanent basis. However, I'm enrolling in Physical therapy and may recover enough to perform my duties, but the claims process is long and the MOSERS handbook advises to file a claim as soon as possible. Again, I may recover during this period in order to perform the material duties of my job and reserve the right to withdraw this claim. I am making this claim now out of an abundance of caution. I hope I may recover. Enclosed are Forms that need to be filled out by my employer with regards to a Long Term Disability Claim with Standard Insurance.
>
> I plan to continue working as best I can under my Reasonable Accommodation pursuant to the ADA. If I can provide any further information, please call.

(Emphasis in original).

Two months later, on October 25, 2010, Vacca filed a complaint with the MCHR and EEOC alleging the chief ALJ was giving him unfair evaluations for those portions of his job that he was unable to complete because of his disability.

On January 3, 2011, Vacca formally submitted an application for long-term disability with MOSERS. Section 104.518[2] provides that a person can qualify for long-

___
[2] All statutory references are to RSMo Cum. Supp. 2011.

4

term disability if disabled as defined by MOSERS' board of trustees. The board, in conjunction with Standard Insurance Company, created a handbook containing two definitions of disability: "any occupation disability" and "own occupation disability." It provides "any occupation disability" exists when the worker is unable to perform the material duties of any occupation for which he or she has the education, training, or experience. "Own occupation disability" exists when the worker is (1) unable to perform with reasonable continuity the material duties of his or her own occupation and (2) suffers a loss of at least 20% of his or her earnings while still working his or her own occupation. Under "own occupation disability," one can work part-time at the same occupation and still receive "return to work" benefits. The amount of benefits is calculated by deducting the amount earned while working part-time from the payment to which the employee would be entitled if unable to work at all for up to two years.

Although Vacca actually continued working until June 2011, in his January 2011 application, Vacca specifically stated his last full day of work was July 23, 2010, and August 1, 2010, was the date he "became unable to work at [his] occupation as a result of disability." He did not qualify his statement by saying he could continue to work part-time or with a reasonable accommodation.

Vacca also attached two physician letters to support his application for long-term disability. Neither of these letters state he could work part-time or with a reasonable accommodation. To the contrary, one physician's letter recommended Vacca quit working at that time, no reasonable accommodations could be made, Vacca was "unable to return" to work, and he would not improve. The other physician letter stated Vacca should cease

5

working the following month due to his progressive disease, Vacca would "never" be expected to markedly improve, and the physician was "unsure whether [Vacca] can physically carry on any kind of work."

Vacca and both physicians signed the application. Each certified "the answers I have made to the foregoing questions are both complete and true to the best of my knowledge and belief."

On January 5, 2011, a few days after Vacca applied for long-term disability, an ALJ review committee met to review Vacca's evaluations. On January 7, 2011, the director of the Division of Workers' Compensation, Brian May, contacted Vacca to inform him that the ALJ review committee would be reconvening on January 12, 2011, to discuss his evaluation and that the chief ALJ would be providing the committee with a supplemental report. In her supplemental report, the chief ALJ made reference to Vacca's MCHR/EEOC complaint. She also included that she had no writing or formal acknowledgment of Vacca's modified work schedule. After reconvening, the ALJ review committee issued a vote of no confidence for Vacca, but took no further action. Vacca continued working.

In February 2011, while his application for long-term disability was pending, Vacca's wife began dissolution proceedings. In his counter-petition, Vacca noted he had applied for long-term disability benefits.

On May 16, 2011, while the dissolution was pending, MOSERS awarded Vacca long-term disability benefits. The next day, MOSERS sent him a letter explaining in detail the determination, nature, and duration of the benefits. Although Vacca had never stopped performing the material duties of an ALJ, nor had he ever worked part-time, the letters

6

awarded him "own occupation disability" benefits, explaining Vacca was eligible for retroactive "return to work" benefits of $738.22 per month for the two years from October 2008 to October 2010 based on his claim he had been disabled for some years and had been working with accommodations while disabled. After that two-year period, MOSERS awarded Vacca continuing "any occupation disability" benefits because it found he was unable to return to any occupation full-time:

> In addition, we have completed a review of your claim to determine whether you meet the second Definition of Disability after it changed on October 29, 2010. Based on our review, you will remain eligible for benefits after October 29, 2010, *because you cannot perform with reasonable continuity the Material Duties of Any Occupation for which you have the education, training and experience*.

(Emphasis added).

May received a copy of this letter. Upon receipt of the MOSERS letter, May notified Vacca that as MOSERS had found Vacca entitled to disability benefits as provided in the MOSERS retirement system, he believed this meant Vacca had become "disabled so that he or she is totally incapable of performing any duties of his or her office." May founded this belief on the contents of the letter and section 287.855, which states:

> Any administrative law judge or legal advisor who, while so employed, becomes disabled so that he or she is totally incapable of performing any duties of his or her office shall be entitled to disability benefits as provided by the Missouri state employees' retirement system.

May said he therefore treated Vacca's acceptance of the benefits from MOSERS as a voluntary quit.

Vacca objected to his termination, arguing he still was able to work if given a reasonable accommodation despite his receipt and acceptance of long-term disability

7

benefits. May disagreed. So, in August 2011 Vacca amended his MCHR/EEOC complaint to include a claim of wrongful termination, in which he asserted he was still able to work with a reasonable accommodation.

Six months later, Vacca amended his petition filed in his marriage dissolution proceeding to state he was no longer able to work at all:

> MATTHEW VACCA is permanently and completely disabled and he is no longer capable of being employed. MATTHEW VACCA currently receives:
> ….
> Monthly Long Term Disability Income

Four months later, Vacca confirmed under oath at trial in the dissolution proceeding that he was no longer able to work regardless of accommodation:

> *[Vacca's Counsel]*: Now, let's talk a little bit about this – the employment that you did have at the Division of – of Workers' Compensation. And then we've heard from your boss and it sounds like accommodations were made, et cetera. In your opinion, do you have the ability to – to concentrate and just from a – from a mental standpoint or emotional standpoint on any type of employment?
> *[Vacca]*: No.
> *[Vacca's Counsel]*: Okay. And can you tell the Court as briefly as possible why you don't think you have the concentration and the emotional – set aside the physical aspects – the emotional and the – the mental concentration components to perform work similar to that which you've performed in your lifetime?
> *[Vacca]*: I just can't keep facts straight anymore, and it's just very difficult to – to do that type of thing any longer. You know, I sleep so much. I'm generally always exhausted. I tell, you know, anybody who wants to hear that I'm like a cell phone on, constantly running in the red with a battery about to die. It just – you know, it's an exhausting day just getting through the daily, you know, things associated with just getting food on the table and getting up, having some kind of a routine. It's just – you know, I try to – to do it as long as I could, but I just – I can't do it anymore.

A few months after this trial testimony, in September 2012, Vacca filed the instant employment action in which he alleged "he was capable of performing the essential

8

functions of his job with reasonable accommodation," he suffered discrimination at work as a result of his disability, he was terminated for his disability, and he was terminated in retaliation for filing a claim with the MCHR and EEOC.[3]  In an amended answer, and later alternatively through summary judgment, defendants argued Vacca should be judicially estopped from claiming he could have continued to work in light of his application for and award of long-term disability benefits.[4]  While the employment action was pending, the judge in the dissolution action entered a judgment awarding Vacca $1,200 per month in maintenance based on his claim in that proceeding that he was unable to work at any

---

[3] The circuit court dismissed counts III (negligent supervision) and IV (negligent training) upon a motion to dismiss.

[4] Rule 55.08 includes "estoppel" in its list of affirmative defenses.  The types of estoppel which are intended to be included in that term are not described.  This has led at least one Missouri court to assume that judicial estoppel is an affirmative defense and must be pleaded as such to be preserved.  *Imler v. First Bank of Missouri, 451 S.W.3d 282, 291 (Mo. App. 2014)*.  A few non-Missouri jurisdictions do treat judicial estoppel as an affirmative defense, which must be preserved in the same manner as other affirmative defenses.  *See, e.g., Seymour v. Collins, 39 N.E.3d 961, 974 n.4 (Ill. 2015)*.  But, generally, an affirmative defense sets out additional facts that defeat the claim of the pleader.  Judicial estoppel operates differently because it is in the nature of a sanction for misuse of the courts.  Other non-Missouri jurisdictions have so noted, stating it is "generally recognized" judicial estoppel is of a different nature than the types of estoppel which should be treated as an affirmative defense because it is invoked "to protect the courts rather than the litigants ... it follows that a court, even an appellate court, may raise the estoppel on its own motion." *In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990)*; *see Eilber v. Floor Care Specialists, Inc., 807 S.E.2d 219, 222-23, n.4 (Va. 2017)* (collecting cases, and noting the support of at least five federal circuits, and holding a court may have an "'independent duty' ... to raise judicial estoppel sua sponte to protect the integrity of the judicial system independent of the interests of the parties") (quotation omitted).  Some jurisdictions seem to say rather both that the doctrine must be raised as an affirmative defense and that it is an equitable doctrine that the court can raise *sua sponte*, despite the seeming inconsistency of these two principles.  *U.S. for Use of American Bank v. C.I.T. Constr. Inc., 944 F.2d 253, 258 (5th Cir. 1991)*.  As judicial estoppel initially was raised here in the defendants' amended answer and no claim is made in the briefs of error in later choosing to address it by means of summary judgment instead, this Court will not address these issues further here.

9

occupation. So far as the record shows, Vacca had not informed the dissolution court before this order was entered that he had alleged in his discrimination lawsuit that he did have an ability to work.

Learning of the judgment in Vacca's dissolution proceeding, the defendants in this action filed a motion for summary judgment asserting, in light of Vacca's statements made in both his application for disability benefits and his dissolution proceedings, Vacca should be "judicially estopped from demonstrating to this Court that he is able, with reasonable accommodation, to perform the job of an ALJ, because he has previously claimed that he is unable to work at all."

The circuit court below denied the defendants' request for judicial estoppel. In so ruling, the circuit court noted that it did so because, since the time the motion for summary judgment had been filed, an appellate court had reversed and remanded the dissolution judgment for further proceedings due to various evidentiary errors as to the amounts of the awards made to Vacca. *Vacca v. Vacca, 450 S.W.3d 490, 492 (Mo. App. 2014)*. But, the circuit court said otherwise it would have found judicial estoppel applied due to Vacca's inconsistent factual claims to disability:

> But for the reversal of the maintenance award in the dissolution action, the Court would have little doubt that Plaintiff cannot claim to be unemployable and at the same time demand damages for wrongful termination of employment subsequent to the date of his allegation of disability in the dissolution action.

The instant discrimination case proceeded to trial in September 2015, while the dissolution action was on remand. At trial in the discrimination case, Vacca testified he

10

could have and would have worked as an ALJ with reasonable accommodations for the next 20 years had he not been terminated.

Ultimately Vacca chose not to submit any claims against the chief ALJ and chose not to submit his discrimination claim against any defendant. He did submit claims against May and the Missouri Department of Labor and Industrial Relations that he was fired, in part, in retaliation for filing his MCHR/EEOC claim in October 2010. In closing arguments, Vacca's counsel argued the jury should award him future lost wages of "$2,884,678. That's his lost compensation" because, had he not been terminated, he would have been an ALJ for 20 more years.

The jury returned a verdict in favor of Vacca and awarded him $4 million in compensatory damages, $2.5 million in punitive damages against the Department, and $500,000 in punitive damages against May, which the circuit court later reduced to $5,000. The circuit court denied the defendants' motion for JNOV or new trial.

After summary judgment was entered in this employment action, Vacca amended his dissolution pleading to state that, while he was otherwise still "permanently and completely disabled" and "no longer capable of being employed," there was now a caveat that he could no longer be employed "other than as an Administrative Law Judge under special conditions." In light of this amended pleading and the denial of summary judgment in the instant action, the dissolution court declined to reinstate the award of maintenance.

## II.    STANDARD OF REVIEW

To the extent this Court is determining the purely legal question of what factors must be shown to invoke judicial estoppel, the standard of review is *de novo*. *ITT*

11

*Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)* (applying *de novo* review to summary judgment because it "is purely an issue of law"). To the extent this Court is reviewing the circuit court's discretionary application of judicial estoppel to the facts of the case, the standard of review is an abuse of discretion. *See, e.g., Alternative System Concepts, Inc., 374 F.3d 23, 30-31 (1st Cir. 2004); Clark v. AII Acquisition, LLC, 886 F.3d 261, 265 (2d Cir. 2018); Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co., 617 F.3d 1040, 1051 (8th Cir. 2010); Kinseth v. Weil-McLain, 913 N.W.2d 55, 66 (Iowa 2018); Seymour v. Collins, 39 N.E.3d 961, 977 (Ill. 2015)*; *TFF, Inc. v. Sanitary and Imp. Dist. No. 59 of Sarpy County, 790 N.W.2d 427, 431 (Neb. 2010).*

### III. *VACCA IS JUDICIALLY ESTOPPED FROM ASSERTING HE WAS ABLE TO WORK AND SO WAS ENTITLED TO FUTURE LOST WAGES*

The dispositive issue in this appeal is whether Vacca should have been judicially estopped from claiming he was entitled to future lost wages, alleging he was able to continue working as an ALJ and would have done so for 20 years had he not been terminated. Vacca argues judicial estoppel cannot apply here because the three prerequisites to application of the doctrine identified by the United States Supreme Court in *New Hampshire v. Maine, 532 U.S. 742 (2001),* are not present here.

Defendants counter that *New Hampshire* identified relevant factors, not necessary prerequisites, to application of the doctrine, and that the principles underlying the doctrine are present here due to the inconsistencies between Vacca's claim in this case that he could have continued to work as an ALJ with accommodations for 20 years and his claim in his

disability application and in his dissolution proceeding that he was unable to work and would be unable to do so in the future.

### A. *History of Judicial Estoppel in Missouri pre-***New Hampshire**

Analysis of this issue is best begun by reviewing how this Court and the court of appeals previously have applied the doctrine of judicial estoppel, and how the United States Supreme Court's decision in *New Hampshire* affects that application.

Missouri, like other jurisdictions, has long recognized the doctrine of judicial estoppel, "which is said to be designed to preserve the dignity of the courts and insure order in judicial proceedings." *Edwards v. Durham, 346 S.W.2d 90, 100-101 (Mo. 1961)*.

Because of the equitable nature of the doctrine and its broad purpose to protect the dignity of the courts rather than the rights of the parties, Missouri courts generally have not found judicial estoppel to have fixed elements. Rather, its contours normally have been governed by whether the need to protect the integrity of the judicial process has required its application to particular facts.

For example, in *Harbin v. Schooley Stationery & Printing Co., 247 S.W.2d 77, 81 (Mo. 1952)*, rather than analyzing the presence or absence of particular elements, this Court simply held a party who had intervened in a prior receivership proceeding:

> without in any way challenging the validity of the receivership order and having utilized the proceeding in the furtherance of his own stated claim for relief … should not now say the receivership was wrongful. We are of the opinion his conduct should estop the assertion of his claim for recovery in this action against defendants based on the theory the receivership was void and wrongful.

*Id*.

13

*Jeffries v. Jeffries, 840 S.W.2d 291, 292-94 (Mo. App. 1992)*, judicially estopped a husband from claiming his child was not born of the marriage when he had stipulated the child was of the marriage during the dissolution proceeding and had signed his name to the birth certificate before marriage. The court did not base its holding on the proof of specific elements. Rather, noting "judicial estoppel has been established in Missouri, and is designed to preserve the dignity of the courts and insure order in judicial proceedings," *id. at 294*, it found application of judicial estoppel necessary to protect the dignity of the proceedings due to the husband's inconsistent factual allegations. *Id.*

Similarly, *Shockley v. Director, Div. of Child Support Enforcement, Mo. Dept. of Social Services, 980 S.W.2d 173, 174 (Mo. App. 1998),* applied judicial estoppel to preclude a state agency from arguing a prior order did not qualify as a court order for child support when in a prior administrative proceeding, the agency had "treated the Dunklin County judgment as a 'court order' … in order to increase petitioner's child support obligation." *Id. at 175.* It did not require a showing the litigant had been successful in using the order in the prior proceeding – indeed, in the prior case the hearing officer had refused to increase child support. This nonetheless was sufficient to constitute an affront to the dignity of the courts that the agency wanted to deny the prior ruling was an order despite having "prevailed in this regard in that the hearing officer accepted the Dunklin County judgment as a court order under the statute and proceeded with a modification proceeding on the merits." *Id. at 176.*[5]

---

[5] *Accord, State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc., 966 S.W.2d 399, 403-04 (Mo. App. 1998)* (applying judicial estoppel to preclude a party from claiming stocks had

*Bellinger v. Boatmen's Nat. Bank of St. Louis, 779 S.W.2d 647, 651 (Mo. App. 1989),* however, somewhat inconsistently said judicial estoppel could not apply where the prior statement was made in a tax filing under penalty of perjury rather than under oath. In support, *Bellinger* cited *Lillo v. Thee, 676 S.W.2d 77 (Mo. App. 1984). Lillo*, however, did not purport to address the question of whether judicial estoppel has set elements, but simply noted it applied when a person "states facts under oath, during the course of a trial." *Id. at 81.* And, relevantly here, relying on *Bellinger*, *Egan v. Craig, 967 S.W.2d 120 (Mo. App. 1998)*, refused to apply judicial estoppel in a suit claiming disability discrimination because the prior inconsistent claim was made in a disability filing rather than in a court.

### B. Supreme Court Decision in *New Hampshire*

This was the somewhat inconsistent state of Missouri law when the United States Supreme Court decided *New Hampshire* in 2001. While it previously had recognized the doctrine, the Supreme Court noted that, until *New Hampshire*, it had not had the opportunity "to discuss the doctrine elaborately." *532 U.S. at 749. New Hampshire* then reviewed the development of the doctrine in the federal courts, noting prior federal decisions:

> have uniformly recognized that its purpose is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *United States v. McCaskey,* 9

value when the party previously had asserted in a suit later dismissed that they were worthless, for "even when the prior statements were not made under oath, the doctrine may be invoked to prevent a party from playing 'fast and loose with the courts.'"); *Vorhof v. Vorhof, 532 S.W.2d 830, 831 (Mo. App. 1975)* (wife judicially estopped from claiming alimony was decretal and so subject to modification when in the prior action, she had successfully contended it was contractual and so not subject to modification).

15

F.3d 368, 378 (C.A.5 1993). See *In re Cassidy,* 892 F.2d 637, 641 (C.A.7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process.").

*Id*. Of course, this is also the way Missouri courts have described the purpose of the doctrine. *New Hampshire* further noted, based on its review of these cases, it had identified three factors that these federal decisions generally had found helpful to consider in deciding whether to invoke judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards,* 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,* 128 F.3d, at 98; *Konstantinidis,* 626 F.2d, at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*.

*New Hampshire* recognized these factors often are relevant in determining whether to invoke judicial estoppel. But, the Supreme Court took pains to note that, because of the equitable and discretionary nature of judicial estoppel, "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *532 U.S. at 750.* *New Hampshire* went on to caution the courts that, in "enumerating these factors, we do not establish inflexible prerequisites or an

16

exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

### C. Post-New Hampshire Decisions Applying Judicial Estoppel Outside Missouri

Many federal and state decisions have followed *New Hampshire* and applied judicial estoppel by first considering the three factors quoted above. These cases generally note these three factors are merely considerations, not elements, although some then limit their inquiry to whether these three factors are present while others give the Supreme Court's caution more than lip service and go on to consider whether the facts of the particular case merit application of the doctrine even where the factors are not fully present.

For instance, the Fifth Circuit noted the *New Hampshire* considerations are merely "non-exclusive" factors that "typically inform the decision whether to apply the doctrine in a particular case." *Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391, 399 (5th Cir. 2003).* *Hall* then went through the factors in deciding whether to apply judicial estoppel to preclude a plaintiff from contending a defective product had been manufactured by corporation A when that same plaintiff had successfully defeated summary judgment and precluded joinder of a third party in prior litigation based on her assertion that she had proof that corporation B had manufactured the product. *Id.*

*Hall* said judicial estoppel had properly been applied by the district court because the claims clearly were inconsistent (there was no showing that new information had come to light – just that the party benefited from making the claim in the prior suit, and the disparate claim in the later suit). *Id. at 398.* And while *New Hampshire* says one should look to success in the prior proceeding, *Hall* said success does not require a judgment in

17

favor of the party against whom estoppel is to be applied. *Id.* This is because "[t]he purpose of the prior success or 'judicial acceptance' requirement is to 'minimize[ ] the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate [ ] the corresponding threat to judicial integrity [internal citation omitted]." *Id.* As a result, "The previous court's acceptance of a party's argument could be 'either as a preliminary matter or as part of a final disposition.' … that doctrine may be applied whenever a party makes an argument 'with the explicit intent to induce the district court's reliance.'" *Id.*

*Otis v. Arbella Mut. Ins. Co., 824 N.E.2d 23, 30 (Ma. 2005),* similarly noted the *New Hampshire* factors are a starting place for application of the doctrine, stating "judicial estoppel is an equitable doctrine, calling for the exercise of discretion in its application to particular facts. Like other courts that have grappled with the 'hazy' contours of the doctrine, we decline to construct a categorical list of requirements or to delineate each and every possible exception." (Internal citations omitted).

The Eighth Circuit in *Kirk v. Schaeffler Group USA, Inc., 887 F.3d 376 (8th Cir. 2018),* has offered a similarly simple explanation of how a federal court should determine whether to apply judicial estoppel after *New Hampshire*. It noted the only fixed requirement for application of the doctrine is that the party against whom judicial estoppel is invoked must have taken inconsistent positions in two proceedings. This is because:

> If a party's positions can be reconciled, there is no need to protect the integrity of the judicial process from inconsistent positions. Thus, Missouri courts routinely reject invitations to apply judicial estoppel upon determining that two positions are not clearly inconsistent. See, e.g., Parrott v. Severs Trucking, LLC, 422 S.W.3d 478, 486-87 (Mo. App. 2014).

18

*Id. At 385.*[6] Once inconsistency is shown, whether to apply the doctrine does not rise or fall on the proof of specific additional factors, for such rigid requirements would be inconsistent with *New Hampshire*'s caution. Rather, it said, these factors' presence would be considered in aid of a court's determination whether to invoke judicial estoppel on particular facts. *Id.*

One of those particular factual situations, which a surprising number of federal cases have addressed post-*New Hampshire*, is when a plaintiff – just like Vacca – applies for disability benefits by claiming total disability to work but then seeks damages in a tort action alleging termination due to disability discrimination. As noted in *Detz v. Greiner Industries, Inc, 346 F.3d 109 (3d Cir. 2003)*, the United States Supreme Court has set out a special and simpler test for the application of judicial estoppel in this "specific factual context" in a case decided two years before *New Hampshire* called *Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 802-03 (1999)*.

*Cleveland* held that often a claim for disability benefits and an ADA claim "can comfortably exist side by side." *526 U.S. at 802-03*. But *Cleveland* also said the "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Id. at 806.*

---

[6] This is consistent with Missouri law before and after *New Hampshire*. *See Imler, 451 S.W.3d at 292* (referring to the first factor as "the threshold essential to a judicial estoppel defense"); *Vinson, 243 S.W.3d at 422* ("Having determined that Husband's initial stance did not conflict with his later stance, we need not discuss the remaining factors"); *Minor v. Terry, 475 S.W.3d 124, 134 (Mo. App. 2014)* (ending its analysis after a determination the "two positions are not clearly inconsistent").

19

*Detz* applied *Cleveland* to a post-*New Hampshire* disability discrimination case in which it found a party had made inconsistent factual claims of disability – first in the administrative application for disability benefits and then in an ADEA lawsuit, which was before the court. *Id. at 118-19.* The Third Circuit said this was just the kind of case in which *Cleveland* said judicial estoppel should be applied to protect the integrity of the judicial system. *Id. at 121.* It did so there, without the need to further examine the *New Hampshire* considerations. *See also Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 137 (2d Cir. 2016)*; *DeCaro v. Hasbro, Inc., 580 F.3d 55, 62 (1st Cir. 2009)*; *Johnson v. ExxonMobil Corp., 426 F.3d 887, 892 (7th Cir. 2005).*

### D. Missouri Post-New Hampshire Cases Applying Judicial Estoppel

Until today, this Court has not had the occasion to address judicial estoppel since *New Hampshire.* The court of appeals has done so, however, using varied and sometimes inconsistent approaches.

*In re Contest of Primary Election Candidacy of Fletcher, 337 S.W.3d 137, 144-45 (Mo. App. 2011),* took an approach very similar to that in *Hall* and *Kirk.* In *Fletcher*, a city council candidate claimed in a federal lawsuit that he was a resident of California in order to obtain diversity jurisdiction but then claimed residency in Kansas City to satisfy candidacy requirements. *Id. at 140-41.* Holding "the three factors set forth in *New Hampshire* are not fixed or inflexible prerequisites," *id. at 145*, the court took an intensely fact-specific approach in finding the application of judicial estoppel was justified "to preserve 'the dignity of the courts and to insure order in judicial proceedings.'" *Id. at 145, quoting, Edwards, 346 S.W.2d at 101.* By contrast, *Vinson v. Vinson, 243 S.W.3d 418,*

20

*(Mo. App. 2008)*, and *Minor v. Terry, 475 S.W.3d 124, 133-34 (Mo. App. 2014),* list the three *New Hampshire* factors as if they are elements rather than mere considerations in deciding whether judicial estoppel applies but do so without addressing that issue directly. Consistent with this approach, Vacca argues this Court should not apply judicial estoppel because one or more of these three *New Hampshire* "elements" is absent.

This Court disagrees with the approach taken in *Vinson* and *Minor*. For the reasons set out in cases such as *Fletcher*, *Hall*, and *Kirk*, it finds judicial estoppel is not a cause of action with elements that must be proven and that are prerequisites to its application. Rather, as *New Hampshire* recognized, it is a flexible, equitable doctrine intended to preserve the integrity of the courts. *New Hampshire* assisted in laying out the factors various federal courts and some state courts had found helpful in determining whether judicial estoppel should be applied, but it did not disapprove the more flexible analysis traditionally used by many Missouri courts prior to that decision, nor did it mandate the use of any of the factors it identified.

To the extent that decisions subsequent to *New Hampshire* have erroneously interpreted *New Hampshire* to have set out elements that must be present to apply judicial estoppel in Missouri, other than a showing that the prior statement and the current statement are inconsistent, they are overruled. All factors that are relevant should be considered by the Court, but once a party takes truly inconsistent positions, there are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire, 532 U.S. at 751*. The factors identified in *New Hampshire* are guideposts, not elements, intended to assist courts in identifying when judicial estoppel

21

should be applied to preserve the integrity of the judicial process and prevent litigants from playing "fast and loose" with the courts. *KelCor, 966 S.W.2d at 403-04; Fletcher, 337 S.W.3d at 145.* Judicial estoppel may be appropriate in a particular case whether those circumstances show the prior statement was made under oath in a judicial proceeding, or under penalty of perjury in an administrative filing, or in pleadings filed with a prior administrative proceeding. *Id.*

### E. *Application of Judicial Estoppel Will Protect the Dignity of the Courts*

Applying these principles to Vacca's discrimination case, this Court first considers whether judicial estoppel should have been applied based on the *New Hampshire* approach due to the factual inconsistencies between Vacca's claims in the dissolution action and in this action, as this was the issue the circuit court addressed in its order below. The record shows that, after Vacca accepted long-term disability benefits, he amended his pleadings in his dissolution action to state he was "permanently and completely disabled," claiming, at that time, no exception for work as an ALJ or with the grant of reasonable accommodations. When testifying in the dissolution action about his inability to work, Vacca unequivocally testified he simply no longer had the strength to work, saying "I can't do it anymore." The circuit court awarded maintenance based on these factual statements. Despite so claiming, in the discrimination lawsuit, Vacca alleged in his pleadings and testified at trial he was not disabled from working as an ALJ so long as he had reasonable accommodations, saying "If I live that long, I would work 20 [more] years."

The circuit court clearly found these allegations inconsistent and so troubling as to warrant application of judicial estoppel if the reversal of the maintenance award did not

22

preclude it from doing so, stating:

> But for the reversal of the maintenance award in the dissolution action, the Court would have little doubt that Plaintiff cannot claim to be unemployable and at the same time demand damages for wrongful termination of employment subsequent to the date of his allegation of disability in the dissolution action.

The reason the circuit court did not apply judicial estoppel was that it believed the second factor – success by the plaintiff in making an inconsistent factual assertion in prior litigation – was not present and so precluded application of the doctrine because the dissolution judgment had been reversed and remanded. But, as just noted, this results from a misunderstanding of *New Hampshire* in two important respects. First, as discussed in detail earlier, the absence of either the second or third *New Hampshire* factor is not dispositive, as these are just factors for consideration in application of an equitable doctrine and not elements of a claim or defense.

Second, *New Hampshire* did not define success as winning a prior judgment on the merits based on the prior factual allegation, as the circuit court below seemed to believe and as Vacca argues. As the Fifth Circuit noted in *Hall, 327 F.3d at 399,* "The previous court's acceptance of a party's argument could be 'either as a preliminary matter or as part of a final disposition.' … [T]hat doctrine may be applied whenever a party makes an argument 'with the explicit intent to induce the district court's reliance.'" In other words, while *New Hampshire* referred to success, it was success in convincing a court to accept one's position, not ultimate success in the case. *See New Hampshire, 532 U.S. at 750* ("courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position"); *Fletcher, 337 S.W.3d at 144.*

23

Vacca was successful in obtaining an award of substantial maintenance based on his assertion that he could no longer work and would not be able to do so in the future. His request for maintenance was not rejected until he was forced to tell the circuit court about his award in his discrimination case.

The third consideration from *New Hampshire* is met when the record shows the plaintiff "would derive an unfair advantage" if permitted to take inconsistent positions in the two actions. *New Hampshire, 532 U.S. at 751.* Vacca claimed total disability and received long-term disability benefits based on his medically supported claim. He obtained maintenance on the same basis, yet then argued that he was terminated despite an inability to work.

This inconsistency forced his employer to attack Vacca by arguing he was unable to work despite his protestations that he could and would work, when it was Vacca himself who had said he could not work. Vacca's inconsistent positions as to his disability present exactly the situation in which judicial estoppel must be invoked "to preserve the dignity of the courts," *Edwards, 346 S.W.2d at 101*, and "to prevent improper use of judicial machinery." *New Hampshire, 532 U.S. at 750.*

Finally, even were the considerations set out in *New Hampshire* not so clearly present, this case presents the kind of "specific factual situation" that calls for application of judicial estoppel under the analysis set out for discrimination cases in *Cleveland, 526 U.S. at 795,* which held judicial estoppel can be applied to prevent a party from making specifically conflicting assertions, first in an administrative application for disability benefits and then in a suit for disability discrimination.

24

In his application for disability, Vacca clearly alleged he was unable to work at all. He did not qualify this statement by saying he could work under reasonable accommodation. In support, he filed two physician statements, one of which said he was completely unable to work at any occupation at that time, while the other said he would be completely unable to work within weeks. Both said he would not improve or was unlikely to improve.

Based on this disability benefits application, Vacca received two years of "return to work" benefits and then received full long-term disability benefits for being unable to work at any occupation. Further, Vacca's only attempt to reconcile his two positions, by claiming he was not fully disabled until after he had been terminated and disheartened, is inconsistent with these claims of total disability six months before his termination when seeking disability benefits.

Nor did Vacca claim in his dissolution action that his disability was caused by his termination. Rather, he claimed it was caused by his disease and prevented him from working entirely. Only after he faced a judicial estoppel challenge in the instant lawsuit did he amend his claim in the dissolution action to now assert he "is permanently and completely disabled and he is no longer capable of being employed *other than as an Administrative Law Judge under special conditions*." (Emphasis added).

While it is obvious why Vacca made this change – he had just defeated summary judgment based on his assertion he could work as an ALJ and his factual claims in his dissolution action were grossly inconsistent with the basis for his recovery in his discrimination suit – such an after-the-fact change was too little and too late. It represented

25

yet an additional attempt to play fast and loose with the legal system.

This Court finds it particularly concerning Vacca took these conflicting positions despite his intimate familiarity with the world of disability. As an ALJ for 19 years, he was knowledgeable enough to understand the legal effect of these conflicting allegations. Vacca's sophistication, gained over nearly two decades of work in the field of disability, makes invocation of judicial estoppel all the more necessary "to protect the integrity of the judicial process." *New Hampshire, 532 U.S. at 749*. Under *Cleveland's* approach, judicial estoppel applies and should have precluded Vacca from claiming in this case that he would have been able to work with reasonable accommodations had he not been terminated.

### F. Remand

While this Court holds judicial estoppel applies to Vacca's claim he would have continued to work had he not been discharged, this Court rejects defendants' argument judicial estoppel should have resulted in a directed verdict against Vacca on his discrimination and retaliation claims.[7] Judicial estoppel applies to prevent inconsistent factual assertions. Here, it means Vacca should have been judicially estopped from

---

[7] Vacca cites no authority for his additional argument defendants were required to preserve the issue of judicial estoppel in their motion for directed verdict or for judgment notwithstanding the verdict (JNOV). Judicial estoppel does not provide a basis for a directed verdict or JNOV in itself. It precludes a party from asserting facts that are inconsistent with a factual position taken by the party in prior proceedings or from a legal position from which the party benefited. If estoppel precludes a party from proving its claim, the failure of proof may result in entry of a directed verdict or JNOV, but only due to the failure of proof, not due to invocation of judicial estoppel. *Rand G. Boyers, Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel, 80 Nw. U. L. Rev. 1244, 1248 (1986)* ("[Judicial estoppel] is not an absolute bar to litigation; rather, it limits the positions that may be maintained on a particular issue.").

claiming he would be able to continue working as an ALJ with or without reasonable accommodation because he was playing "fast and loose" with our judicial machinery, alleging total disability to obtain benefit checks and maintenance awards while testifying in the discrimination suit he could work every day for the next 20 years with accommodations so that he could obtain substantial future lost wages.

Being judicially estopped from claiming he could continue to work substantially affects the damages that Vacca may claim in the form of lost wages and the relevance of other evidence relating to that issue. But Vacca still may have been entitled to recover other damages if the jury agrees with his claim that his inability to work due to his disability was merely a pretext to justify his termination or other unfavorable job actions. This Court has held, for example, "retaliation exists under section 213.070 when (1) a person files a complaint, testifies, assists or participates in an investigation, proceeding or hearing conducted pursuant to chapter 213 and (2), as a direct result, he or she suffers any damages due to an act of reprisal." *Keeney v. Hereford Concrete Prod., Inc., 911 S.W.2d 622, 625 (Mo. banc 1995).* Although Vacca is estopped from claiming he was able to continue working as an ALJ, that does not foreclose his recovery on a claim, if any, that does not require him to show he was able to continue working.

For these reasons, this Court reverses the judgment for Vacca for actual and punitive damages, as they depended on his claim for future lost wages. [8] This also moots the issues

---

[8] Because Vacca has not prevailed on appeal, this Court denies as moot his motion in which he requests attorney's fees on appeal under the MHRA § 213.111.2, which permits attorney's fees to be awarded to a prevailing party.

27

raised on appeal regarding post-judgment interest.  But this Court remands the case for the reasons stated.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.