

# In the
# Missouri Court of Appeals
# Western District

KEVIN LABRANCHE,

    Appellant,

    v.

KANSAS CITY PUBLIC SCHOOLS,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

**WD84914**
**OPINION FILED:**
**APRIL 18, 2023**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Patrick W. Campbell, Judge**

**Before Division One: Anthony Rex Gabbert, Presiding Judge, W. Douglas Thomson, Judge,**
**Janet Sutton, Judge**

Kevin LaBranche appeals the circuit court's grant of summary judgment to

Kansas City Public Schools and Douglas Bolden ("Employer" collectively) on

Employer's contention that judicial estoppel bars LaBranche's employment

discrimination/retaliation claims against Employer. On appeal, LaBranche contends the

circuit court abused its discretion in determining there was no genuine dispute as to the

existence of facts necessary to support judicial estoppel in that, despite LaBranche's

failure to list the claims named in his First Amended Petition in bankruptcy schedules,

there was no judicial acceptance of an inconsistent position, and LaBranche did not

derive an unfair advantage because the nondisclosure of his claim was inadvertent and

resulted from a good faith mistake rather than an attempt to mislead the court. We reverse and remand.

## Background and Procedural Information

On May 12, 2017, LaBranche filed a Charge of Discrimination with the Missouri Commission on Human Rights (the "Commission") alleging that Northeast High School Principal, Douglas Bolden, continuously discussed religion in the workplace and engaged in other activities regarding religion that offended LaBranche and created a hostile work environment. LaBranche reported his concerns to his supervisor, as well as the Human Resources Director and Employer Labor Specialist. LaBranche alleged that, thereafter, Bolden continued to discuss religion in LaBranche's presence, although purportedly having been told to cease such activity, and that LaBranche was retaliated against after reporting his concerns.

On March 9, 2018, LaBranche filed another Charge of Discrimination with the Commission alleging that, after filing Charges of Discrimination, he had been retaliated against and subjected to unwarranted discipline, including being terminated from employment on September 18, 2017, without just cause and for pretextual reasons. LaBranche alleged that, as a result of Employer's actions, LaBranche suffered humiliation and embarrassment, mental and emotional distress, as well of loss of employment, pay, benefits, and promotional opportunities. On January 30, 2019, LaBranche requested "Right to Sue" notices for both Charges of Discrimination.

On February 8, 2019, LaBranche filed a Petition for Damages alleging discrimination and retaliation by Employer.  At that point, LaBranche had not yet received right to sue notices from the Commission for the allegations contained in his petition, but alleged that he had filed a request for those notices with the Commission. Right to sue notices were ultimately issued March 19 and 20, 2019.

On April 4, 2019, Employer moved to dismiss LaBranche's petition arguing that LaBranche failed to comply with a necessary precondition for a valid claim under the Missouri Human Rights Act (MHRA) by filing his claim without right to sue notices. The circuit court granted LaBranche's request to file an amended petition, and LaBranche filed his First Amended Petition on May 28, 2019, amending his original petition to allege that he had received right to sue letters from the Commission.  Employer filed an answer to that First Amended Petition on June 7, 2019.

On September 11, 2020, Employer moved for summary judgment, arguing there was no genuine dispute as to any material fact showing that LaBranche was barred by judicial estoppel from asserting his MHRA claims against Employer.  Employer alleged that LaBranche's failure to disclose his pending charges of discrimination during his Chapter 13 bankruptcy proceeding showed that LaBranche took inconsistent positions in the two cases, thereby barring his MHRA suit against Employer.  Employer argued that this was proven by the summary judgment record because LaBranche verified to the bankruptcy court under penalty of perjury that his bankruptcy schedules were true and correct, but the schedules did not list his pending charges of discrimination against

3

Employer, and LaBranche failed to amend his schedules to notify the bankruptcy court when he filed his lawsuit against Employer.

The summary judgment record shows that on October 2, 2018, LaBranche filed a Chapter 13 petition for bankruptcy. On October 25, 2018, LaBranche filed "Official Form 106Sum - Summary of Your Assets and Liabilities and Certain Statistical Information" which included a section titled, "Schedule A/B: Property" ("Schedule"). Part 4 of the Schedule asks the debtor to "Describe Your Financial Assets," and "Do you own or have any legal or equitable interest in any of the following?" Part 4 also asks for "Money or property owed to you?" and the "Current value of the portion you own?" Thereunder is question #33 which asks for "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment. Examples: Accidents, employment disputes, insurance claims, or rights to sue." In response to question #33, LaBranche checked "Yes" and listed the following:

> Employment Discrimination Claim
> Case No. 1716-CV21241 – Kevin LaBranche v. American Century Services LLC
>
> Employment Discrimination Claim
> Case No. 1816-CV18247 – Kevin LaBranche v. AEG Kansas City Arena, LLC f/k/a Anschutz Kansas City Arena, LLC
>
> Personal Injury Claim
> Case No. 1816-CV23665 – Kevin LaBranche v. City of Kansas City, Missouri.

Question #34 asks for, "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." LaBranche checked the "No" box for this question.

LaBranche admitted in response to Employer's Uncontroverted Statement of Material Facts that LaBranche's bankruptcy filings omitted in question #33 any reference to the May 12, 2017 or March 9, 2018 charges of discrimination, and that the "No" box was checked in answer to question #34. LaBranche additionally admitted that he had declared "under penalty of perjury" that the summary and schedules filed with the declaration were true and correct to the best of his knowledge, information, and belief.

LaBranche filed a Memorandum in Opposition to Defendants Motion for Summary Judgment arguing that neither the law nor the facts supported judicial estoppel. LaBranche argued that, he had not been granted the right to sue when he completed the bankruptcy schedules, he dismissed the bankruptcy case simultaneously with requesting the right to sue rather than amend the schedules, and he never had any debt discharged in the bankruptcy case. LaBranche also argued a good faith reliance on his attorney's advice, and a good faith belief that his answers were correct as he understood the questions. Relying on *Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006) and *Loth v. Union Pac. R.R. Co.*, 354 S.W.3d 635, (Mo. App. 2011), LaBranche contended that summary judgment was inappropriate because whether a party acts in bad faith in failing to disclose information involves a credibility determination. Further, that the non-movant is given the benefit of all reasonable inferences, and if the evidence can support

any inference other than bad faith, a genuine dispute exists which precludes summary judgment.[1]

LaBranche filed his own Statement of Uncontroverted Material Facts which included that, during the bankruptcy proceeding, LaBranche was represented by legal counsel and fully disclosed the Charges of Discrimination and that he had neither requested nor received notice of a right to sue for those Charges. Further, that LaBranche disclosed in his Chapter 13 Plan three pending lawsuits. LaBranche's facts additionally state that, when he requested a right to sue from the Commission on January 30, 2019, he chose to dismiss the bankruptcy case rather than file an amendment to the Schedule. Thereafter, LaBranche's bankruptcy attorney filed to dismiss the case, and on February 1, 2019, the bankruptcy court entered an order of dismissal. LaBranche attested that he completed the bankruptcy Schedule in good faith and based upon his understanding of the form's instructions and advice of counsel. Further, that he had no intent or motive to conceal the existence of the Charges of Discrimination. LaBranche included an affidavit with his Statement of Uncontroverted Material Facts which attested to the aforementioned.

Argument was heard on Employer's motion for summary judgment on June 18, 2021. On July 19, 2021, the circuit court issued its order granting summary judgment to

---

[1] Employer asserts on appeal that LaBranche never asserted to the circuit court that there was a genuine dispute as to the facts necessary to support judicial estoppel and, therefore, failed to preserve his claim on appeal. The record shows otherwise.

Employer. The court found that LaBranche's failure to disclose the pending Charges of Discrimination in the bankruptcy proceeding represented "clear inconsistent positions taken in the Plaintiff/Debtor's bankruptcy proceeding and the instant case." The court found that, despite LaBranche's dismissal of the bankruptcy case, an order had been entered accepting LaBranche's bankruptcy Plan based on his Schedule, thereby demonstrating judicial acceptance of LaBranche's prior inconsistent position. The court determined that LaBranche's nondisclosure was not inadvertent or a good faith mistake because "LaBranche's only attempt to create a fact issue regarding whether he acted inadvertently was to state that he filed a dismissal after receiving his right to sue." The court found that, LaBranche's dismissal of his bankruptcy case "tends to further emphasize that LaBranche did understand the scope of his duty to disclose in his bankruptcy proceedings[.]" Further, that LaBranche "knew of his duty to disclose because he did in fact make disclosures of three other pending lawsuits in his Schedules, none of which represent claims in the present Case." The court found "no inkling of a simple good-faith mistake in the aforementioned omission" and that the omission created "both an unfair advantage for LaBranche and an unfair detriment to his Creditors." The court concluded: "Thus, having found inconsistent positions, judicial acceptance, inadvertence,[2] and that both an unfair advantage and unfair detriment would derive from

---

[2] The court twice mentioned that it found "inadvertence" in LaBranche's omission of the claims from the Summary of Schedules filed in the bankruptcy proceeding, however the court's ruling suggests that no inadvertence was found.

these, the Court finds the Doctrine of Judicial Estoppel to be applicable in this Case."
This appeal follows.

## Standard of Review

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In such cases, we do not defer to the trial court's decision, but instead use the same criteria that the trial court should have employed in initially deciding whether to grant the motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. 2007). We review the record in the light most favorable to the party against whom judgment was entered, and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Com. Fin. Corp.*, 854 S.W.2d at 376. A genuine issue that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 376. The moving party bears "the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support that right to judgment." *Id.* at 378. We review the circuit court's discretionary application of judicial

8

estoppel to the facts of the case for an abuse of discretion. *Vacca v. Missouri Dept. of Labor and Industrial Relations*, 575 S.W.3d 223, 230 (Mo. banc 2019). Legal errors constitute an abuse of discretion. *Baldridge v. Kansas City Public Schools*, 552 S.W.3d 699, 712 (Mo. App. 2018). "A trial court can abuse its discretion through the inaccurate resolution of factual issues or through the application of incorrect legal principles." *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009).

**Point on Appeal**

LaBranche contends on appeal that the circuit court abused its discretion in determining there was no genuine dispute of as to the existence of facts necessary to support judicial estoppel in that, despite LaBranche's failure to list the claims named in his First Amended Petition in bankruptcy schedules, there was no judicial acceptance of an inconsistent position, and LaBranche did not derive an unfair advantage because the nondisclosure of his claim was inadvertent and resulted from a good faith mistake rather than an attempt to mislead the court.

The seminal case in Missouri discussing the application of judicial estoppel is *Vacca v. Missouri Department of Labor and Industrial Relations*, 575 S.W.3d 223 (Mo. banc 2019). Vacca was a former Administrative Law Judge for the Missouri Division of Workers' Compensation who filed for and received long-term disability benefits upon claiming that he became unable to work as a result of his disability. *Id.* at 227-229. Vacca also confirmed under oath in a dissolution proceeding that he was completely unable to work, which resulted in an award of $1,200 per month maintenance from his

9

former wife. *Id.* at 228-229. Vacca then claimed in a disability discrimination suit with his employer that he was able, with reasonable accommodation, to perform the job of an ALJ. *Id.* at 229. The employer argued that Vacca's claims were barred by judicial estoppel, and the Court held that, because of Vacca's prior assertions regarding complete disability, Vacca was estopped from claiming in the disability discrimination suit that he was able, with reasonable accommodation, to perform the job of an ALJ. *Id*. at 238.

In deciding *Vacca*, the Missouri Supreme Court discussed the following judicial estoppel considerations which were set forth in the United States Supreme Court case, *New Hampshire v. Maine*:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Vacca*, 575 S.W.3d at 232-233 (quoting *New Hampshire*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed. 2d 968 (2001) (internal quotation marks and citations omitted).

*Vacca* went on to discuss that, judicial estoppel is not a cause of action with elements that must be proven and that are prerequisites to its application, but instead is a flexible, equitable doctrine. *Id.* at 235. The Court held that the only fixed prerequisite to application of judicial estoppel is that a party must have taken "inconsistent positions."

10

*Id.* at 225. The Court did not dispense with the additional *New Hampshire*

considerations, but clarified that the additional considerations are not necessary elements

or absolute prerequisites to finding judicial estoppel. *Id.* at 235. "All factors that are

relevant should be considered by the Court, but once a party takes truly inconsistent

positions, there are no 'inflexible prerequisites or an exhaustive formula for determining

the applicability of judicial estoppel.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751, 121

S.Ct. 1808). "The factors identified in *New Hampshire* are guideposts, not elements,

intended to assist courts in identifying when judicial estoppel should be applied to

preserve the integrity of the judicial process and prevent litigants from playing 'fast and

loose' with the courts." *Vacca*, 575 S.W.3d at 236. Judicial estoppel protects the integrity

of the judicial process by "prohibiting parties from deliberately changing positions

according to the exigencies of the moment." *Id.* at 232 (internal citations and quotation

marks omitted). The doctrine of judicial estoppel operates differently than an affirmative

defense in that it does not set out "additional facts that defeat the claim of the pleader,"

but rather "is in the nature of a sanction for misuse of the courts." *Id.* at 229 n.4.

In applying the *New Hampshire* factors to the facts in *Vacca*, the Court found all

factors "clearly present," but noted that the *Vacca* case also presented the kind of

"specific factual situation" that calls for application of judicial estoppel under the analysis

set out for discrimination cases in *Cleveland v. Policy Management Systems Corp., 526*

*U.S. 795, 802-03, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)*. *Vacca*, 575 S.W.3d at 237.

*Cleveland* held that judicial estoppel can be applied to prevent a party from making

11

specifically conflicting assertions, first in an administrative application for disability benefits and then in a suit for disability discrimination. *Vacca*, 575 S.W.3d at 237.

Here, to have been entitled to summary judgment on the grounds of judicial estoppel, Employer first had to prove there was no genuine dispute that LaBranche's filing of his discrimination cases against Employer on February 8, 2019, was "clearly inconsistent" with his failure to list his MHRA complaints as "claims against third parties" or as "other contingent and unliquidated claims of every nature" in his bankruptcy Schedule.

The record shows that, in response to Employer's motion for summary judgment, LaBranche did not dispute that his failure to report his MHRA Charges of Discrimination against Employer in his bankruptcy case represented an inconsistent position with his MHRA case filing.[3] We, therefore, take no position on this factor other than to find that the circuit court did not abuse its discretion in concluding there were no material facts in dispute with regard to LaBranche taking an inconsistent position in the two cases.

This does not end our inquiry, however, as the facts surrounding any "inconsistency" in this case do not present the kind of "specific factual situation" that

---

[3] LaBranche argued in his Memorandum in Opposition to Defendant's Motion for Summary Judgment that the facts of his case are "closely akin to those in *Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006)" where the court found that Stallings's "failure to disclose in bankruptcy the subsequent filing of the pending cause of action was an inconsistent position, however the second and third prongs of the equitable estoppel doctrine were not met." LaBranche makes no claim on appeal that the circuit court erred in concluding that he took inconsistent positions.

calls for application of judicial estoppel as set out in *Cleveland,* nor do they so glaringly evidence a purposeful scheme to manipulate the judicial system such as was present in *Vacca* to warrant judicial estoppel on inconsistency alone.

In ruling on Employer's summary judgment motion, the circuit court considered the additional *New Hampshire* factors of "judicial acceptance" and "unfair advantage or detriment." As noted above, the "judicial acceptance" factor involves consideration into "whether the party has succeeded in persuading a court to accept the earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *New Hampshire*, 532 U.S. at 750. Concerns in this regard surround the risk of inconsistent court determinations which threaten judicial integrity, and success in a prior proceeding is indicative of such risk. *Id.* at 750-751. The "unfair advantage or detriment" factor entails consideration into "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Traditionally, the doctrine of judicial estoppel has not been applied "when a party's prior position was taken because of a good-faith mistake rather than as a part of a scheme to mislead and manipulate the court." *Loth*, 354 S.W.3d at 638. *New Hampshire* stated that, "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." 532 U.S. at 753 (internal quotation marks and citations omitted).

13

In reviewing the circuit court's analysis with regard to these factors, we first address "unfair advantage or detriment" and find that the circuit court abused its discretion in finding no material facts in dispute with regard to this factor. The circuit court failed to give LaBranche the benefit of all reasonable inferences, and the facts viewed in the light most favorable to LaBranche could result in a different conclusion regarding the application of judicial estoppel.

The summary judgment record shows that, question #33 in LaBranche's bankruptcy Schedule asks for "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," with examples listed as "accidents, employment disputes, insurance claims, or rights to sue." LaBranche listed three lawsuits pending in circuit court (two involving employment discrimination), but did not list the two MHRA Charges of Discrimination against Employer which were on file with the Commission. Question #34 asks for "Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." LaBranche checked the "No" box.

LaBranche's Statement of Uncontroverted Material Facts, supported by an affidavit by LaBranche, states that LaBranche was represented by legal counsel during the bankruptcy proceeding, and that he disclosed to Counsel that he had filed charges of discrimination against Employer but had not requested or received a "Right to Sue." LaBranche states that, question #33 specifically cites "rights to sue" as an example of

"claims against third parties," and the Schedule was completed in good faith based on LaBranche's understanding of the form's instructions and advice of counsel.

In considering whether LaBranche's omissions were inadvertent or based on a good-faith mistake, rather than a scheme to mislead the court, the circuit court ruled that, LaBranche's statement that he did not yet have the right to sue insufficiently explained why he failed to disclose the charges of discrimination, and LaBranche "failed to offer any other explanation as to why he did not disclose his 'employment disputes'" with Employer or in response to the Schedule's request for disclosure of "other contingent and unliquidated claims of every nature." The court found that, LaBranche's "only attempt to create a fact issue regarding whether he acted inadvertently was to state that he filed a dismissal after receiving his right to sue." The court concluded that, "this tends to further emphasize that LaBranche did understand the scope of his duty to disclose in his bankruptcy proceedings[.]" The court found that, LaBranche's dismissal of the bankruptcy action, rather than amendment to the bankruptcy Schedules, showed a lack of inadvertence and that, "LaBranche knew of his duty to disclose because he did in fact make disclosures of three other pending lawsuits in his Schedules[.]" The court found "no inkling of a simple good-faith mistake in the aforementioned omission" which the court concluded created both an unfair advantage for LaBranche and unfair detriment to his creditors, thus supporting the application of judicial estoppel.

15

Yet, the circuit court could have only reached these conclusions by drawing factual inferences, and making credibility determinations, unfavorable to LaBranche.[4] Giving LaBranche the benefit of all reasonable inferences, it can be equally inferred from the summary judgment record that LaBranche believed if he did not yet have a "right to sue," he had no "claim" to report in the bankruptcy action.[5] Such a belief cannot be completely discounted as unreasonable given that "rights to sue" is listed as an example of "claim" under question #33. Under the Missouri Human Rights Act, a person aggrieved by an unlawful discriminatory practice cannot file a civil action without first filing a complaint

---

[4] Notably, the circuit court's Judgment states that, "Whether a debtor's failure to disclose claims was inadvertent presents a question of fact." (Citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010)).

[5] The term "claim" in bankruptcy is defined as:

(A) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5).

with the Commission. § 213.075.1, RSMo Cum. Supp. 2022.[6] If the Commission has not completed its administrative processing after one hundred eighty days from the filing of an employment discrimination complaint, the complainant may then request a letter which communicates the right to bring a civil action. § 213.111, RSMo Cum. Supp. 2022.

Significantly, LaBranche *did list* under question #33 three pending lawsuits, two of which are employment discrimination claims. We can presume that LaBranche had been granted right to sue notices on those claims. Although the circuit court found these other reported cases evidence that LaBranche "knew of his duty to disclose because he did in fact make disclosures of three other pending lawsuits in his Schedules," the opposite could also be true. Because LaBranche listed suits for which he had a right to sue and the Summary used "rights to sue" as an example of a "claim," a fact finder entrusted with making credibility determinations could conclude that, LaBranche reasonably believed that he was not required to report MHRA complaints for which he

---

[6] After the filing of the complaint, the executive director along with Commission staff is to investigate the complaint and, if probable cause is found to credit the allegations, endeavor to eliminate the unlawful discriminatory practice by "conference, conciliation and persuasion." Given this, it is conceivable that some complainants may not be seeking monetary damages or to file a civil suit at all, and may simply desire an investigation and corrective action by the Commission. § 213.075.3.

17

had not received a right to sue notice. [7]

Question #34 of LaBranche's bankruptcy schedules, like question #33, uses the term "claim." While LaBranche may very well have been attempting to conceal his MHRA complaints when responding "No" to whether he had "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," if LaBranche's belief that question #33 defined "claim" as requiring a right to sue, and without a right to sue there was no "claim," then LaBranche's failure to list his pending MHRA charges on his bankruptcy Schedule could be perceived as inadvertent or a good-faith mistake by a finder of fact.

The circuit court additionally found that LaBranche's failure to amend his Schedule to add the MHRA claims *after* receiving right to sue notices evidenced a lack of inadvertence by LaBranche. The court cited[8] *Stallings*, 447 F.3d at 1048, stating:

> A Chapter 13 debtor who receives a right to sue letter from the EEOC while his bankruptcy case is pending, and then fails to amend his bankruptcy petition to add his lawsuit against his employer as a potential asset, is estopped from bringing the lawsuit because the debtor knew about the undisclosed claims and had a motive to conceal his employment discrimination claims from that court.

---

[7] And, while "employment disputes" is also listed as an example under question #33 and LaBranche's MHRA charges did involve "employment disputes," because an employment dispute under the MHRA requires a right to sue notice before a civil action can commence, only a finder of fact reaching credibility determinations can determine if LaBranche's Schedule was completed in good faith based on his understanding of the form's instructions and attorney advice, or if it was unreasonable for LaBranche to believe that a "claim" as described in the Schedules's instruction did not require a "right to sue" notice to be considered such.

[8] The court purported to quote *Stallings*, however did so inaccurately.

18

First, this *Stallings* reference tends to support LaBranche's purported belief that a right to sue notice triggers the necessity to report an MHRA complaint to the bankruptcy court since it discusses the debtor's obligation to report *after* a right to sue notice is issued. Second, if LaBranche was justified in his belief that a right to sue notice triggers reporting the claim to the bankruptcy court, or that this belief was reasonable and in good faith based on his understanding of the forms and attorney advice, then the summary judgment record does not unequivocally support that LaBranche's dismissal of the bankruptcy case, rather than amendment of the Schedule, proves bad faith or a motive to conceal his claims.

In response to Employer's motion for summary judgment, LaBranche attests in his affidavit that, when LaBranche's attorney requested a right to sue notice on the MHRA claims, LaBranche decided to dismiss the bankruptcy case rather than amend the Schedule. The bankruptcy court docket sheet, filed by Employer to support its motion for summary judgment, shows in relevant part that, LaBranche's bankruptcy petition was filed October 2, 2018. LaBranche's Schedule *and* Chapter 13 Plan was filed October 25, 2018. The bankruptcy Trustee filed "Trustees Motion to Dismiss Case" on November 16, 2018. A hearing was set for January 14, 2019, to address that motion. The Trustee withdrew the motion on December 27, 2018, and LaBranche's Chapter 13 Plan was confirmed by the bankruptcy court on January 4, 2019. LaBranche requested right to sue notices on the MHRA charges against Employer on January 30, 2019. LaBranche requested dismissal of his bankruptcy case on January 31, 2019, and the bankruptcy court

19

entered an "Order Dismissing Case on Debtor's Motion" on February 1, 2019.  On

February 8, 2019, LaBranche filed his petition on the MHRA claims.  On March 5, 2019,

the Trustee filed a "Chapter 13 Trustee Final Report and Account due to Dismissal," and

on March 6, 2019, the court approved the Trustee's Final Account and discharged the

Trustee.  Right to sue notices on the MHRA charges were issued March 19 and 20, 2019.

On April 22, 2019, "Bankruptcy Case Closed" was entered on the docket sheet.

Given this timeline of events, we are not left with the overwhelming impression

that LaBranche's failure to amend his Schedule on a case he had already been granted a

dismissal proves lack of inadvertence, as the court found, or that LaBranche was

attempting to mislead any court.  We find this particularly true where LaBranche had not

yet received right to sue notices on his MHRA claims when he dismissed the bankruptcy

case, and the case relied upon by the circuit court discusses the necessity of amending

Schedules *after* receiving a right to sue notice.  Immediately following the above

statement relied upon by the circuit court in *Stallings*, the *Stallings* court states:

> Notably, judicial estoppel does not apply when a debtor's prior
> position was taken because of a good-faith mistake rather than as part of a
> scheme to mislead the court.  Although it may generally be reasonable to
> assume that a debtor who fails to disclose a substantial asset in bankruptcy
> proceedings gains an advantage, the specific facts of a case may weigh
> against such an inference.  A rule that the requisite intent for judicial
> estoppel can be inferred from the mere fact of nondisclosure in a
> bankruptcy proceeding would unduly expand the reach of judicial estoppel
> in post-bankruptcy proceedings and would inevitably result in the
> preclusion of viable claims on the basis of inadvertent or good-faith
> inconsistencies.  Careless or inadvertent disclosures are not the equivalent
> of deliberate manipulation.  Courts should only apply the doctrine as an

20

extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice.

447 F.3d at 1049 (internal quotation marks and citations omitted).

Because the circuit court relied heavily on its determination that there was no inadvertence or mistake by LaBranche in applying judicial estoppel, and there is a genuine dispute as to whether the underlying facts show inadvertence or mistake, the circuit court abused its discretion in finding that the facts applied to the "unfair advantage or detriment" factor supported summary judgment to Employer on the issue of judicial estoppel.

Using similar reasoning, the circuit court additionally found there was "judicial acceptance" by the bankruptcy court of LaBranche's inconsistent position, which supported application of judicial estoppel. While the circuit court acknowledged that, "[m]any Courts have determined 'acceptance' based on whether the bankruptcy court has actually discharged the debt of the debtor," citing *Stallings*, the circuit court nevertheless found that lack of debt discharge did not preclude judicial estoppel on LaBranche's facts, stating that a bankruptcy court must simply have accepted a party's position that his claims in the present case did not exist, citing *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1034 (2016). The circuit court found that, LaBranche failed "to offer any reason for his omission" of the MHRA charges in the bankruptcy case and instead "attempts to justify this omission by dismissing his bankruptcy proceedings." Because an order was issued accepting LaBranche's bankruptcy Plan based on his bankruptcy Schedule, the

21

circuit court found that, "the case law, while limited, seems to prefer that a debtor in similar circumstances file an amendment to their summary of schedules, not merely dismiss the action." The court concluded that, because LaBranche's bankruptcy Plan was accepted by the bankruptcy court and a stay remained in effect on the creditors until the case was closed, the "judicial acceptance" factor weighed in favor of judicial estoppel.

First, *Jones* does not state what the circuit court's Judgment suggests. Jerry Jones filed for bankruptcy in 2009 and filed a discrimination lawsuit against an employer in 2013. *Id.* at 1031-1032. Jones did not report the discrimination suit to the bankruptcy court, and had his debts discharged in bankruptcy in 2014. *Id.* at 1032. After the employer was granted summary judgment on the grounds of judicial estoppel, Jones reopened the bankruptcy case, amended his schedules to include his discrimination claims, and then asked for the judicial estoppel ruling to be set aside. *Id.* On appeal, the *Jones* court found judicial acceptance "because the bankruptcy court, *by discharging Jones' unsecured debts*, adopted the position that his discrimination claims did not exist." *Id.* at 1033 (emphasis added). *Jones* stated that, despite Jones later reopening the bankruptcy estate to add his discrimination claims to his schedules, because the court had previously discharged his debt, "'the [bankruptcy] court's original discharge of the debt is sufficient acceptance of the debtor's position to provide a basis for judicial estoppel.'" *Id.* (quoting *Stallings*, 447 F.3d at 1048). No debt was discharged in LaBranche's bankruptcy case, and given the circuit court's reliance on *Jones* for an inaccurate

22

premise, we cannot say if the circuit court would have reached the same conclusion with regard to "judicial acceptance" if it had properly understood *Jones*.

Second, while the circuit court found it significant that "the Bankruptcy proceeding continued for some time after the dismissal was filed, and, until that later date, a stay remained in effect on the creditors in said Bankruptcy proceeding," pursuant to 11 U.S.C. § 362(c)(2)(B), the stay ended when the dismissal was granted, which was prior to LaBranche receiving right to sue notices on the MHRA claims. We cannot say if the circuit court would have reached the same conclusion with regard to "judicial acceptance" if it had understood that the bankruptcy stay was lifted when the dismissal was granted and not the "later date" of case closure.

Third, the summary judgment record shows that, the same day LaBranche filed his Schedule with the bankruptcy court, he also filed his proposed "Chapter 13 Plan." This Plan, signed by LaBranche and included as Exhibit 2 with his Statement of Uncontroverted Facts, states in Section 5.1 that, "If debtor has a pending or *potential* lawsuit or other administrative proceeding, whether or not such cause of action is listed on Schedule A/B, any net, non-exempt proceeds which become liquidated shall be turned over to the trustee absent other court order or other agreement with the trustee." (Emphasis added). Hence, in the light most favorable to LaBranche, the Plan submitted by LaBranche and approved by the bankruptcy court included an averment by LaBranche that he would relinquish to the bankruptcy trustee any future proceeds from potential

23

lawsuits against Employer. The facts therefore, viewed in this light, do not unequivocally show that the bankruptcy court accepted an inconsistent position by LaBranche.

Fourth, while the circuit court found that LaBranche failed to offer any reason for omitting the MHRA charges from his bankruptcy Schedules, the record reflects that LaBranche did offer a reason, which was that the Schedule gave "rights to sue" as an example of a "claim," and he did not yet have a right to sue on his MHRA Charges of Discrimination. Further, that he completed his Schedule in good faith "based upon my understanding of the form's instructions, and advice of counsel," and decided to dismiss the bankruptcy case rather than amend the Schedule when the right to sue notices were requested. While the circuit court did not find LaBranche's justifications for omitting the MHRA complaints and dismissing the case as credible, this credibility determination was improper in a summary judgment proceeding. "When a court is faced with a credibility determination on an issue material to the cause of action, summary judgment is not

proper." *Loth*, 354 S.W.3d at 642.[9]

Moreover, when considering both the "judicial acceptance" and "unfair advantage or detriment" factors of *New Hampshire*, we find that the circuit court failed to draw inferences in the light most favorable to LaBranche, and improperly reached credibility determinations. Because the summary judgment record supports two plausible but contrary inferences as to whether the material facts warrant judicial estoppel, a genuine dispute of material fact exists. *ITT Commercial Finance*, 854 S.W.2d at 382 (holding a "genuine issue" exists where the record contains competent evidence supporting "two plausible, but contradictory, accounts" of the facts). Accordingly, Employer is not

---

[9] LaBranche filed with his Motion to Vacate, Correct, Amend, or Modify Judgment an affidavit by his bankruptcy attorney, Hunter Gould. While this was not part of the summary judgment record and we need not rely upon it for our conclusions herein, it further exemplifies that a fact finder could reach different conclusions as to the material facts and their implications with regard to judicial estoppel.
Gould attests that he was informed by LaBranche on December 4, 2018 of the administrative filings against Employer. Gould states that, at that time, the Trustee's motion to dismiss the bankruptcy case was pending, and "no amendments to the schedules were filed as typically amendments are directly related to overcoming the threat of dismissal." The same day the Trustee withdrew the motion to dismiss, the Trustee certified LaBranche's bankruptcy Plan for confirmation. Pursuant to Section 5.1 of that Plan, LaBranche was required to turn over any proceeds from the MHRA claims against Employer. Gould was informed by LaBranche on January 15, 2019, by email, that LaBranche wished to dismiss the bankruptcy case and work with creditors outside of bankruptcy. No amendments to the Schedule were filed as they would have made no practical difference in the administration of the soon to be dismissed case, and would have incurred unrecoverable attorney fee costs. On January 29, 2019, LaBranche signed an affidavit instructing Gould to dismiss the bankruptcy case, which was filed January 31, 2019, and granted February 1, 2019.

entitled to summary judgment. *Id.*; *Green v. Fotoohighiam*, 606 S.W.3d at 113, 115 (Mo. banc 2020) ("[G]enuine disputes as to material facts preclude summary judgment").

LaBranche's point on appeal is granted.

## Conclusion

The circuit court abused its discretion in concluding there were no material facts in dispute and that Employer was entitled to summary judgment on the issue of judicial estoppel. The circuit court's judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

_____
Anthony Rex Gabbert, Judge

All concur.