

# Missouri Court of Appeals
## Western District

JEANNE JOHNSON,                    )

                                     )   **WD85851**

              **Respondent,**   )

**v.**                           )   **OPINION FILED:**

                                     )

**CITY OF KANSAS CITY, MISSOURI,**   )   **April 30, 2024**

                                   )

                **Appellant.**   )

                                   )

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable John Torrence, Judge**

**Before Division Two: Thomas N. Chapman, Presiding Judge,
Karen King Mitchell, Judge, and W. Douglas Thomson, Judge**

The City of Kansas City, Missouri (the "City") appeals a judgment entered by the Circuit Court of Jackson County following a jury verdict in favor of Jeanne Johnson ("Johnson") on her claims for disability discrimination and retaliation for filing a charge of discrimination under the Missouri Human Rights Act ("MHRA"). The City raises four points on appeal, arguing that the trial court erred by (1) failing to apply judicial estoppel, (2) refusing the City's proffered verdict form, (3) allowing the issue of future economic losses to be submitted to the jury, and (4) denying its motion for remittitur. The judgment is affirmed, and the case is remanded with directions.

## Background

Johnson was employed by the City from 1999 until her termination on July 16, 2018. Beginning in December of 2000, she worked in the Traffic Signals Maintenance Department of the City Public Works Department. During her employment Johnson suffered multiple workplace injuries.

Johnson received multiple carpal tunnel diagnoses and underwent multiple surgeries. Johnson filed a workers' compensation claim in 2014 and one in 2015. Johnson filed a workers' compensation claim in 2014 for a carpal tunnel injury to her right arm from July of that year. Johnson filed a workers' compensation claim for a carpal tunnel injury to her left arm from January of 2015.

In 2015, Johnson was required to be away from work while treating her carpal tunnel injuries. In October of 2015, Johnson's workers' compensation benefits ceased. At that time, Johnson was not cleared to return to work.

Johnson attempted to return to work in the spring of 2016; however, she suffered an aggravation of her prior injuries. At that time, Johnson was on unpaid leave. Johnson continued to treat her injuries with a hand specialist in 2016. Johnson underwent carpal tunnel release surgery in September of 2016. Johnson underwent another carpal tunnel release surgery in December of 2016.

In March of 2017, Johnson received a letter from Hartford, an insurance company that had previously provided Johnson with disability benefits. Hartford indicated that it had referred Johnson to Allsup, a Social Security Disability Insurance ("SSDI")

2

representation company that would assist Johnson in determining her eligibility for SSDI benefits and in obtaining such benefits. In April of 2017, Allsup submitted an application for SSDI benefits on Johnson's behalf. In August of 2017, that application was denied. In August of 2017, Johnson requested an appeal hearing with the Social Security Administration ("SSA").

On October 31, 2017, the specialist that had been treating Johnson cleared Johnson to return to work. Johnson provided a note from the specialist to the City and sought to return to work. The City did not allow Johnson to return to work. The City did not seek clarification from Johnson's physician. Johnson continued to contact the City about returning to work. In December of 2017, Johnson was informed that she was on "non-work status." The City informed Johnson that she would not be allowed in the building when Johnson sought to secure her work materials after learning that someone had broken into her tool chest and taken property.

On March 9, 2018, Johnson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR").

On July 16, 2018, Johnson was terminated from her employment with the City. At the time of her termination, she had last actively worked for the City in April of 2016. A record submitted to the Human Resources Department for the City indicated that the reasons for her termination were: "Failure to report to work/job abandonment," "Excessive absences," and "Due to medical reasons employee has not reported to work

3

since 2016." The document contained a place to mark as a reason for separation: "Inability to perform job." The document did not identify that this was a reason for the separation.

On July 17, 2018, a hearing was held on Johnson's SSDI appeal. In September of 2018, the administrative law judge ("ALJ") in the SSDI benefits case issued a decision which granted SSDI benefits.

In December of 2018, Johnson filed a petition in the lawsuit from which this appeal follows. The petition included, *inter alia*, claims for disability discrimination and retaliation for filing a charge of discrimination.

In December of 2020, Johnson's workers' compensation attorney, on behalf of Johnson, amended her workers' compensation claims to include claims for permanent total disability.

Trial began on March 14, 2022. The morning of trial, the City filed an amended answer to include the affirmative defense of judicial estoppel. The City asserted that Johnson should be judicially estopped from claiming that she would have been able to continue her employment with the City or could have accepted a position in any other department with the City with or without reasonable accommodation.

Following a five-day jury trial, the jury found in Johnson's favor on her claims for disability discrimination, retaliation, and punitive damages. The jury awarded Johnson $278,694.00 in back pay, $994,584.00 in future economic losses, $81,000.00 in non-economic losses, and $500,000.00 in punitive damages.

4

Following the verdict, the trial court entered judgment and thereafter entered an amended judgment. The trial court granted the City's motion to apply the damage cap in section 213.111.4, such that Johnson's damages for future economic losses, noneconomic losses, and punitive damages were capped at $500,000.00. The amended judgment also granted a motion for attorney's fees in favor of Johnson.

Following trial, the City filed a Motion for Judgment Notwithstanding the Verdict ("JNOV"),[1] a Motion for New Trial, and a Motion for Remittitur. The trial court denied the City's motions on November 17, 2022.

The City now appeals to this court.

## Analysis

The City raises four points on appeal. In its first point, the City argues that the trial court erred in declining to apply judicial estoppel to bar Johnson's claim of disability discrimination. In its second point, the City argues that the trial court erred in refusing the City's proffered verdict form. In its third point, the City argues that the trial court erred in allowing future economic losses to be submitted to the jury. In its fourth point, the City argues that the trial court erred in denying the City's motions for new trial and remittitur. We address these points in turn.

---

[1] The City had previously moved for directed verdict at the close of evidence based in part on its judicial estoppel argument.

5

**Point One**

In its first point, the City argues that the trial court erred in denying its motion for directed verdict, its motion for JNOV, and its motion for new trial, because judicial estoppel should have been applied to bar Johnson's claim of disability discrimination.[2] The City argues that Johnson made claims before other entities that were inconsistent to her claims at trial.

Whether a trial court erred in its discretionary application of judicial estoppel is reviewed for abuse of discretion. *Vacca v. Mo. Dep't of Lab. & Indus. Rels.*, 575 S.W.3d 223, 230 (Mo. banc 2019). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack

---

[2] The City's first point on appeal asserts trial court error with respect to multiple actions of the trial court and argues in a single point that the trial court erred in denying the City's motion for new trial and motions for directed verdict/JNOV despite the fact that the motions are subject to different legal standards and request different relief. *See Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 586 S.W.3d 329, 342 (Mo. App. S.D. 2019). The City's point is multifarious and preserves nothing for review. *See id.* We exercise our discretion to address, *ex gratia*, the City's argument that the trial court abused its discretion in declining to apply judicial estoppel.

We also note that *Vacca* made clear that "[j]udicial estoppel does not provide a basis for a directed verdict or JNOV in itself." *Vacca v. Mo. Dep't of Lab. & Indus. Rels.*, 575 S.W.3d 223, 238 n.7 (Mo. banc 2019). "Judicial estoppel is not an absolute bar to litigation; rather, it limits the positions that may be maintained on a particular issue." *Id.* (citation and brackets omitted). Although application of judicial estoppel may have the effect of rendering an opposing party unable to prove an essential element of its claim, thereby warranting the entry of directed verdict or JNOV, it is not the invocation of judicial estoppel that dictates such a result, but the opposing party's failure of proof. *See id.* Accordingly, an analysis regarding the applicability of judicial estoppel is necessarily distinct from an analysis that directed verdict/JNOV was warranted on the basis of judicial estoppel.

of careful deliberate consideration." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 125 (Mo. banc 2023) (citation omitted).

Missouri courts have "long recognized the doctrine of judicial estoppel, which is said to be designed to preserve the dignity of the courts and insure order in judicial proceedings." *Vacca*, 575 S.W.3d at 231 (internal quotations and citation omitted). Judicial estoppel "is a flexible, equitable doctrine intended to preserve the integrity of the courts." *Id.* at 235. It "is not a cause of action with elements that must be proven and that are prerequisites to its application." *Id.* Judicial estoppel may be appropriate when a party has taken truly inconsistent positions in separate proceedings. *Id.*; *McKinney v. Mercy Hosp. St. Louis*, 604 S.W.3d 680, 690 (Mo. App. E.D. 2020). The doctrine is discretionary, *Vacca*, 575 S.W.3d at 230, and, in determining whether to apply the doctrine, courts are to consider all relevant factors. *Id.* at 235-36.

The Supreme Court of the United States has identified certain factors that have regularly assisted courts in determining whether judicial estoppel should be applied in a given case. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). These factors have regularly been considered by Missouri courts in "identifying when judicial estoppel should be applied to preserve the integrity of the judicial process and prevent litigants from playing 'fast and loose' with the courts." *See Vacca*, 575 S.W.3d at 236 (considering whether judicial estoppel should have been applied by the circuit court "based on the *New Hampshire* approach").

7

*New Hampshire* indicated that courts should first examine whether a party's later position is "clearly inconsistent" with its earlier position. *New Hampshire*, 532 U.S. at 750. *New Hampshire* also noted that courts regularly "inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" *Id.* (internal quotations and citation omitted). In explaining the rationale for this factor, the court noted that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Id.* at 750-51 (internal citations and quotations omitted). Finally, *New Hampshire* indicated that courts should consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751 (citations omitted).

The City argues that Johnson should have been estopped from asserting that she could have worked with a reasonable accommodation. The City's briefing largely ignores the timeline of events and fails to assert a set of dates on which Johnson should have been estopped from asserting she could have worked. However, in moving for directed verdict at the close of the evidence, the City argued that Johnson should be estopped from stating that she could work after October 31, 2017. This coincides with Johnson's arguments regarding damages, which were based on her ability to work after October 31, 2017 rather than her ability to work prior to that date. Accordingly, we

8

consider the City to be arguing on appeal that Johnson should have been estopped from testifying that she could have worked following October 31, 2017.

The City cites to six statements in the record that the City claims were inconsistent with Johnson's trial testimony. The City's arguments are based on a number of statements made by Johnson in SSDI proceedings that took place prior to trial as well as allegations made in workers' compensation proceedings that were ongoing at the time of trial. We address the City's contentions about the various proceedings separately, given that the SSDI proceedings had concluded, while the workers' compensation proceedings were ongoing at the time of trial.

Before addressing the City's arguments regarding the SSDI proceedings, we first examine the relevance to this case of *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), which the Missouri Supreme Court indicated would be applicable in disability discrimination cases in Missouri. *See Vacca*, 575 S.W.3d at 237-38; *see also McKinney*, 604 S.W.3d at 692.

In *Cleveland*, the Supreme Court of the United States addressed whether an SSDI claim and a claim under the Americans with Disabilities Act ("ADA") were inherently inconsistent, as well as "the legal effect upon an ADA suit of the application for, or receipt of, disability benefits." *Cleveland*, 526 U.S at 800. *Cleveland* made clear that the case before it did not involve "directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.'" *Id.* at 802. Instead, the court recognized that a representation of total disability to

9

the SSA "often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.'" *Id.* at 802.

After examining statutes relevant to SSDI and ADA claims, the court recognized that, despite an appearance of conflict, there were "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." *Id.* at 802-03. In particular, the court noted that, in determining whether an individual is disabled for SSDI purposes, the SSA "does *not* take the possibility of a 'reasonable accommodation' into account[.]" *Id.* at 803 (emphasis in original). The court further noted that an applicant for SSDI benefits does not need to refer to the possibility of a reasonable accommodation when applying. *Id.* at 803 (citing Memorandum from Daniel L. Skoler, Associate Comm'r for Hearings and Appeals, SSA, to Administrative Appeals Judges, reprinted in 2 Social Security Practice Guide, App. § 15C[9], pp. 15–401 to 15–402 (1998)). As a result, "an ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) *without* it." *Id.* at 803.

The court also recognized that the SSA sometimes grants benefits to individuals who can and are working, noting that the SSA may continue to pay benefits to facilitate a disabled person's reentry into the workforce. *Id.* at 805. The court noted that an improvement in a disabled person's condition does not necessarily or immediately lead the SSA to terminate SSDI benefits. *Id.* The court noted that an individual's condition may change over time such that the statement in an application for SSDI benefits "may

10

not reflect an individual's capacities at the time of the relevant employment decision."

*Id.* Additionally, *Cleveland* recognized that "if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." *Id.* The Court noted that the Federal Rules of Civil Procedure "recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'" *Id.* (citing Fed. R. Civ. P. 8(e)(2)).[3]

Although recognizing that sometimes an SSDI claim and an ADA claim can comfortably coexist, the court also recognized that there could be circumstances in which an earlier SSDI claim may genuinely conflict with an ADA suit:

> An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI claim. Rather, she must proffer a sufficient explanation.

*Id.* at 805-06. Where the conflict involves a legal conclusion, such as a sworn statement asserting "'total disability' or the like, the court should require an explanation of any

---

[3] Missouri Supreme Court Rule 55.10 operates similarly.

11

apparent inconsistency with the necessary elements of an ADA claim." *Id.* at 807.[4] To avoid resolution as a matter of law, the explanation must be sufficient to allow a reasonable juror to conclude "that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions of her job, with or without 'reasonable accommodation.'" *Id.* at 807.

In *Cleveland*, a plaintiff attempted to provide a sufficient explanation to reconcile an SSDI statement that she was "totally disabled" with the element of her ADA claim that she could perform the essential functions of her job. *Id.* The plaintiff explained that her SSDI statements "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work." *Id.* (citation omitted). The plaintiff further explained that her SSDI statements were accurate at the time they were made. *Id.* The Supreme Court held that the parties should have the opportunity to present or contest these explanations in the trial court, and in sworn form where appropriate. *Id.*; *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117 (3d Cir. 2003) (recognizing *Cleveland* found such explanations sufficient to defeat summary judgment and proceed to trial).[5]

---

[4] This insistence on explanation in the context of legal conclusions followed from the court's acknowledgement that such explanations had generally been required in the analogous context of purely factual contradictions. *Cleveland*, 526 U.S. at 807.

[5] *Detz* involved a claim under the Age Discrimination in Employment Act ("ADEA") rather than the ADA. *Detz*, 346 F.3d at 117. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 893 (7th Cir. 2005) (recognizing that, in the context of explaining inconsistencies, the standard for an ADEA claim is more exacting than the standard for an ADA claim, as the "ADEA does not allow for 'reasonable accommodation'").

12

In this matter, despite framing its argument in its point relied on as being based on contradictory claims, the City fails to make any arguments regarding the legal requirements of SSDI proceedings or how they would inherently conflict with Johnson's disability discrimination claim under the MHRA. Disability claims under the MHRA involve a separate set of statutes than those of the ADA that were addressed in *Cleveland*. Nevertheless, the MHRA, like the ADA, and unlike SSDI proceedings, considers the effect of a reasonable accommodation on an individual's ability to perform the job. *See* § 213.010(5).[6] *See also McKinney*, 604 S.W.3d at 692.

With regard to Johnson's statements in the SSDI proceedings, the City first argues that Johnson's April 20, 2017 application for SSDI benefits included a statement that she became "unable to work because of her disabling condition on March 9, 2015." At the time of the application, Johnson was continuing treatment of her condition and was not yet cleared to work. There is nothing truly inconsistent with this statement and Johnson's testimony at trial that she could work from October 31, 2017 (when her physician evaluated her and cleared her to return to work) onward.

The City then argues that correspondence sent from the SSA to Johnson on August 10, 2017 included statements that Johnson was unable to work. Aside from the fact that

---

[6] Section 213.010(5) defines disability for purposes of the Missouri Human Rights Act:

> (5) "Disability", a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question. . . .

Johnson did not write this document, the document was written more than two months prior to October 31, 2017 while Johnson was still undergoing treatment and had not been cleared to work. Thus, this statement is not truly inconsistent with Johnson's testimony at trial that she could work from October 31, 2017 onward.

The City then argues that Johnson made inconsistent statements in her request for an appeal hearing on August 21, 2017. Again, any statement therein was made more than two months prior to October 31, 2017 while Johnson was engaged in ongoing treatment and had not been cleared to return to work. Therefore, her statement therein that her disability was preventing her from working was not truly inconsistent with Johnson's trial testimony that she could work from October 31, 2017 onward.

The City argues further that Johnson should have updated her application for SSDI benefits after becoming able to work lest she be estopped from testifying that she could work with a reasonable accommodation upon her physician's release of October 31, 2017. *Cleveland* indicated that applicants for SSDI benefits are not expected to indicate whether they can work with a reasonable accommodation in applying for benefits as this information is not expected or taken into account. *Cleveland*, 526 U.S. at 803 ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.") (emphasis in original).

14

Further, Johnson first received a favorable decision from the SSA following an appeal hearing in July of 2018, after Johnson's employment had already been terminated. Extensive medical records were presented including her physician's evaluation and release from October 31, 2017 indicating that the ALJ was presented with updated evidence regarding Johnson's condition as of July of 2018. In the ALJ's decision following the hearing, the decision indicates that Johnson provided certain testimony at the hearing, including that her carpal tunnel syndrome was worsening, and that she could not lift more than ten pounds. However, Johnson's testimony from that hearing is not contained in our record on appeal, such that we cannot assume what her precise testimony was. Worsening is a relative term that needs a point of comparison, and it is not clear what that point of comparison was in Johnson's testimony. It is not necessarily inconsistent for Johnson's symptoms to have worsened sometime after October 31, 2017 (had that been the point of comparison) and for Johnson to have been capable of working with a reasonable accommodation in July of 2018. And, it is not necessarily inconsistent for Johnson to be unable to lift more than ten pounds and be capable of working with a reasonable accommodation in July of 2018. The City makes no discernible arguments as to how Johnson's testimony (as represented in the decision) at the SSA appeal hearing was truly inconsistent with her trial testimony, and instead follows its pattern of citing

15

various things from the record without explaining their significance in apparent expectation that this court will become an advocate for the City.[7]

We find that the City has failed to sufficiently support its argument that Johnson made statements in the SSDI proceedings that were truly inconsistent with her trial testimony given the timeline of events.[8] Accordingly, we find the trial court did not abuse its discretion in declining to apply judicial estoppel based on Johnson's statements in the SSDI proceedings.

---

[7] The City's argument largely directs us to *Vacca* and argues that this case is factually identical to *Vacca* without recognizing or addressing obvious distinctions. Some of those distinctions are as follows. In *Vacca*, the plaintiff had previously sought and received disability benefits from the Missouri state employees' retirement system (rather than SSDI benefits) based on his "claims of being *disabled from all work with or without reasonable accommodation*." *See Vacca*, 575 S.W.3d at 225 (emphasis added). The plaintiff in *Vacca* also sought and was initially awarded maintenance in an ongoing dissolution of marriage proceeding based on his claim that "he was totally unable to work." *Id.* In those proceedings, the plaintiff in *Vacca* "confirmed under oath at trial" "that he was no longer able to work *regardless of accommodation*[.]" *Id.* at 228 (emphasis added).

In Johnson's case, Johnson made no representations in the SSDI proceedings about her ability to work with a reasonable accommodation. Johnson's filings in the SSDI proceedings were made at times (April and August of 2017) when she was not working and was engaged in ongoing treatment while recovering from surgeries. The suit underlying this appeal was not based on Johnson's ability to work during those earlier time periods, but instead on her ability to work after October 31, 2017 when she was medically cleared to return to work by her physician. Johnson also made repeated requests to the City to return to work following October of 2017, but was disallowed from doing so by the City. In *Vacca*, the plaintiff's employment was terminated upon his receipt of benefits due to the employer's belief that the plaintiff had asserted he was no longer capable of being employed. *See id.* at 228; *see also* § 287.855. In contrast, Johnson continued to try to return to work prior to her termination and was terminated prior to having any success in the SSDI proceedings.

[8] Further, to the extent required, Johnson's trial testimony included explanations of the alleged inconsistencies – including that the SSA does not consider reasonable accommodations and that her statements were true when made – that were found sufficient to defeat summary judgment in *Cleveland*. *See Cleveland*, 526 U.S. at 807. At trial, the jury reasonably could believe (and apparently did believe) Johnson's testimony.

16

We now turn to the City's asserted inconsistencies regarding the workers' compensation proceedings. The City argues that Johnson's workers' compensation claims were amended in December of 2020 to seek compensation for permanent total disability. These claims were apparently ongoing at the time the trial court declined to apply judicial estoppel.

The City does not include any analysis of the legal significance of an allegation of permanent total disability. The City completely fails to cite to any workers' compensation statutes to set forth the legal meaning of permanent total disability under Missouri law. Rather, the City apparently requests that this Court become an advocate for the City, which this Court cannot do.

In any case, the question before us is whether the trial court abused its discretion in declining to apply judicial estoppel. *Vacca*, 575 S.W.3d at 230. There were numerous circumstances before the trial court that would weigh against applying judicial estoppel simply on the basis of Johnson's claims in her ongoing workers' compensation cases.

In determining whether judicial estoppel should apply, courts regularly give significant weight to whether the party has had success in the separate proceeding. *Vacca*, 575 S.W.3d at 236; *New Hampshire*, 532 U.S. at 750-51 (indicating that there is little risk to judicial integrity absent success in prior proceeding); *Cleveland*, 526 U.S. at 805 (noting that inconsistencies as to the theory of claims is normally tolerated in our legal system in the absence of success in the prior proceeding). This is so because parties are allowed, in a single judicial proceeding, to assert inconsistent claims in their

17

pleadings. *See* Rule 55.10; *cf.* Fed. R. Civ. P. 8(e)(2).[9] Of course, if inconsistent claims are asserted in separate proceedings, rather than a single proceeding, then there is a risk of inconsistent determinations, which pose a risk to judicial integrity. *New Hampshire*, 532 U.S. at 750-51. However, absent success in the separate proceeding, a party's inconsistent theories have been recognized to pose little risk to judicial integrity, *id.*, and are normally tolerated. *Cleveland*, 526 U.S. at 805.

This is not to suggest that success in the separate proceeding is required for judicial estoppel to issue or that an allegation in an administrative pleading could not be grounds for judicial estoppel. *Vacca* made clear that judicial estoppel *may* be appropriate upon the taking of truly inconsistent positions. *Vacca*, 575 S.W.3d at 235-36. However, *Vacca* also indicated that all relevant factors are to be considered, *id.*, and that the trial court's decision was discretionary. *Id.* at 230. In this matter, there were circumstances before the trial court indicating that the trial court did not abuse its discretion in declining to apply judicial estoppel based solely on the theory of the claims presented in Johnson's ongoing workers' compensation proceedings.

The City also argues that Johnson testified in a November 2021 deposition in her workers' compensation proceeding that she had been 100% disabled since "maybe 2016." In support of this assertion, the City cites to Exhibit 315, which was apparently a video

---

[9] Although the Missouri Rules of Civil Procedure and its pleading requirements do not generally apply in workers' compensation proceedings, this circumstance is a result of workers' compensation proceedings being less formal and generally containing less requirements for pleadings or motions. *See U.S. Dep't of Veterans Affs. v. Boresi*, 396 S.W.3d 356, 362-63 (Mo. banc 2013).

deposition. However, Exhibit 315, similar to numerous other exhibits cited by both the City and Johnson in their respective appellate briefing, is not contained in our record on appeal.[10] The City also cites to a portion of the transcripts in which a clip from Johnson's video deposition was played for the jury. However, the transcripts do not support the City's assertion.

On cross-examination, Johnson was asked if she had ever stated that she was "100-percent disabled." Johnson replied that she had not. The City then sought to introduce a video clip from her deposition, which the City's attorney indicated would show a prior inconsistent statement of Johnson saying that she "was 100-percent disabled in 2016." The transcripts indicate that a clip was played for the jury. Johnson agreed that the clip showed her saying that she was "100-percent disabled *as of* 2016." (emphasis added). Upon further questioning at trial, Johnson then explained that she was disabled in 2016 and had not been cleared to work until October 31, 2017. Johnson testified at trial that she had not maintained any 100-percent or permanent disability since then. In Johnson's brief, Johnson cites to what is purported to be the context of the same deposition (not in our record), which would provide support for her testimony at trial and arguments on appeal that the City was attempting to take her statement out of context.

---

[10] In addition to the absence of Exhibit 315 from our record on appeal, we note that the briefing of both parties included numerous citations to their respective appendices rather than to the record on appeal. "Items contained in an appendix, but which are not in the legal file or deposited with the appellate court, are not considered on appeal." *City of Kansas City v. Cosic*, 540 S.W.3d 461, 464 (Mo. App. W.D. 2018) (quoting *WCT & D, LLC v. City of Kansas City*, 476 S.W.3d 336, 345 (Mo. App. W.D. 2015)).

The appellant has the burden on appeal to demonstrate error in the trial court's judgment. *City of Kansas City v. Cosic*, 540 S.W.3d 461, 463 (Mo. App. W.D. 2018). Rule 81.16(a) provides: "If original exhibits are necessary to the determination of any point relied on, they shall be deposited in the appellate court by the appellant. . . ." When exhibits necessary to the determination of the points on appeal "are not made a part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appeal." *Cosic*, 540 S.W.3d at 464 (quoting *Navarro v. Navarro*, 504 S.W.3d 167, 176 (Mo. App. W.D. 2016)). In this matter, we must consider the omitted exhibit as unfavorable to the City's appeal.

The City has failed to establish that the trial court abused its discretion in declining to apply judicial estoppel (based on Johnson's statements in the SSDI proceedings and workers' compensation proceedings) to prevent Johnson from stating at trial that she could work (with a reasonable accommodation) after October 31, 2017 (the date that she was medically cleared to return to work but disallowed from doing so by the City). The City has failed to establish that the trial court's ruling was "clearly against the logic of the circumstances then before the trial court and [] so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Black River Motel*, 669 S.W.3d at 125.

Point one is denied.

20

**Point Two**

In its second point on appeal, the City argues that the trial court erred in refusing the City's proffered verdict form because the verdict form used allowed the jury to return damages that were not properly in the case. The City argues that the jury was given a verdict form that allowed the jury to assess future economic losses, even though the instruction regarding the damages to be awarded did not reference future economic losses.

Questions of whether a jury was properly instructed are subject to *de novo* review. *Williams v. Mercy Clinic Springfield Communities*, 568 S.W.3d 396, 413 (Mo. banc 2019) (citing *Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 777 (Mo. banc 2018)). "An instructional error is only grounds for reversal when the instruction misdirected, misled or confused the jury and resulted in prejudice." *Id.* Appellate courts "will reverse only if the error resulted in prejudice that materially affected the merits of the case." *Id.* (citing *Hervey v. Missouri Dep't of Corr.* 379 S.W.3d 156, 159 (Mo. banc 2012)). The appellant carries the burden of showing prejudice resulted from an erroneous instruction. *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 635 S.W.3d 109, 123 (Mo. App. E.D. 2021) (citing *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 186 (Mo. banc 2019)).

In this matter, the jury found in favor of Johnson on her disability discrimination and retaliation claims. Regarding damages, the jury awarded Johnson $278,694.00 in back pay, $994,584.00 in future economic losses, $81,000.00 for non-economic losses,

and $500,000.00 in punitive damages. The trial court thereafter granted the City's previously filed motion to apply the damage cap set forth in section 213.111.4 and reduced the total damages awarded for the categories of future economic losses, noneconomic losses, and punitive damages to $500,000.00. *See* § 213.111.4(1)-(2)(d) (capping actual damages at $500,000 plus back pay and interest on back pay for certain categories of employers). This application of the damage cap resulted in a reduction of $1,075,584.00. Following the trial court's application of the damage cap, the City's motion for new trial requested a new trial on the issue of future economic damages, arguing *inter alia* that the jury was not properly instructed because future economic damages should not have been included on the verdict form.

The City's Appellant's Brief inexplicably fails to mention the trial court's application of the damage cap, which reduced the award by more than the amount of future economic damages assessed. Even after Johnson's Respondent's Brief pointed out that the other damages awarded (noneconomic and punitive damages) exceeded the capped award, the City still made no discernible argument as to prejudice.[11] In short, the

---

[11] The first (and only) time the City addresses the imposition of the cap on damages, is in its Reply Brief:

> Johnson attempts to argue that because of the application of the damage caps, any harm that would come from the jury awarding future economic losses is de minimis. This assertion by Johnson is also not supported by the law as there is no case law that suggests that the amount of a judgement [sic] can render a trial courts [sic] error moot. Whether a judgement [sic] includes a single dollar or millions, the inclusion of future economic losses to the overall judgement [sic] demonstrates the prejudicial effect the offending instruction had on the merits of the case.

City never explains how the purported instructional error resulted in prejudice, once the cap on damages had been imposed. The City makes no arguments that allowing an award of future economic damages on the verdict form affected any of the jury's findings or damage calculations aside from the jury's assessment of future economic damages. The City had the burden of showing that the alleged instructional error resulted in prejudice that materially affected the merits of the case. *Williams*, 568 S.W.3d at 413. Because the City has failed to allege or show such prejudice, it is unnecessary to address the City's arguments on its second point further.

Point two is denied.

## Point Three

In its third point on appeal, the City argues that the trial court erred in allowing future economic losses to be submitted to the jury in the verdict form because it improperly allowed the jury to award future economic losses in the form of front pay. The City argues that front pay is an equitable remedy decided by the court. Again, the City's point relates to future economic losses, and its brief nevertheless neglected to address, or even inform us, of the trial court's application of the damage cap. The damages assessed for noneconomic losses and punitive damages (which are not challenged) exceed the $500,000.00 cap, regardless of the award of future economic

---

Aside from use of the word "prejudicial," the City's argument still fails to address how it was prejudiced where, after imposition of the cap on damages, the judgment was less than the unchallenged damages.

23

damages. The City makes no arguments that its asserted error affected any other finding so as to warrant a new trial. The City fails to make any arguments as to how this asserted error materially affected the outcome, so as to allow for reversal. *See* Rule 84.13(b). Accordingly, any further discussion of this point would be merely advisory.

Point three is denied.

## Point Four

In its fourth point, the City argues that the trial court erred in denying its motion for new trial and motion for remittitur because the jury's award for future economic losses was not supported by the evidence in that no evidence of future damages was presented.[12] Again, the City's arguments relate solely to the issue of future economic losses, and again the City fails to address the fact that, following the application of the damage cap, the award would be the same regardless of whether or not future economic losses were eliminated from the award. The City's motion for remittitur requested that the damage award be reduced to back pay and punitive damages, which in this case amounted to back pay plus $500,000.00, which was precisely the amount of the award after application of the damage cap. Thus, the City cannot show it was prejudiced by the denial of its motion for remittitur. The City makes no arguments that its asserted error

---

[12] The City fails to select an action of the trial court to challenge and instead argues in a single point that the trial court erred in denying the City's motion for new trial and motion for remittitur, despite the fact that the City made separate arguments and requested different relief in the two motions. *See Meadowfresh Solutions USA, LLC v. Maple Grove Farms, LLC*, 586 S.W.3d 329, 342 (Mo. App. S.D. 2019). The City's point is thus multifarious and preserves nothing for appeal. *See id.*

affected any other finding so as to warrant a new trial. The City makes no arguments as to how its asserted error materially affected the outcome so as to allow for reversal and render further discussion of the asserted error more than merely advisory. *See* Rule 84.13(b).

Point four is denied.

**Motion for Attorney's Fees on Appeal**

Before this case was submitted in this court, Johnson filed a motion for an award of attorney's fees incurred on appeal. This motion has been taken with the case. Rule 29 of this court's local rules provides: "Any party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this Court has jurisdiction to consider, must file a separate written motion before submission of the cause. . . ." Section 213.111.2 authorizes a court to award reasonable attorney's fees to the prevailing party. "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Wilson v. City of Kansas City*, 598 S.W.3d 888, 898 (Mo. banc 2020) (quoting *Kader*, 565 S.W.3d at 190 n.7).

Johnson prevailed on her claims for disability discrimination and retaliation and successfully defended the judgment on appeal. Thus, Johnson is a prevailing party. Pursuant to section 213.111.2, this court is authorized to award Johnson attorney's fees on appeal. However, the circuit court "is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Wilson*, 598 S.W.3d

25

at 898 (quoting *Berry v. Volkswagen Grp. Of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. banc 2013)). Johnson's motion for attorney's fees on appeal is sustained. We remand to the trial court to determine and award Johnson's reasonable attorney's fees on appeal.

## Conclusion

The judgment is affirmed. Johnson's motion for attorney's fees on appeal is sustained. The cause is remanded to the trial court to determine and award Johnson's reasonable attorney's fees on appeal.

_____
Thomas N. Chapman, Presiding Judge


All concur.